**MARYLAND CASUALTY COMPANY,**
a Corporation, Plaintiff,

v.

**CONTINENTAL CASUALTY COMPANY,** a Corporation, Employers Mutual Liability Insurance Company of Wisconsin, a Corporation, Fairmont Machinery Company, a Corporation, Transportation Rentals Corporation, a Corporation, James A. Tabor, Jr., d/b/a Tabor Trailer Sales, Tony DeMoss, Paul Frazier, Michael Butler and Charles James Lloyd, Defendants.

Civ. A. No. 607–F.

United States District Court
N. D. West Virginia,
at Fairmont.

Dec. 6, 1960.

---

Herschel Rose, Fairmont, W. Va., for plaintiff.

C. H. Hardesty, Jr., Furbee & Hardesty, Fairmont, W. Va., for defendants Continental Cas., and Transportation Rentals Co.

Oscar J. Andre and Herbert G. Underwood, Steptoe & Johnson, Clarksburg, W. Va., for defendants Employers Mut. Liability Ins. Co. of Wisconsin, and Fairmont Machinery Co.

Joseph M. Sanders, Bluefield, W. Va., for defendant James A. Tabor, Jr., d/b/a Tabor Trailer Sales.

Frank V. Sansalone, Maruka & Sansalone, Fairmont, W. Va., for defendant Tony DeMoss.

Robert M. Amos, Fairmont, W. Va., for defendant Charles James Lloyd.

HARRY E. WATKINS, Chief Judge.

This is an action for declaratory judgment tried by the Court and arising out of an accident in which one person was injured and certain private property was damaged.

The action is brought by one insurance company, Maryland Casualty, against two other insurance companies, Continental Casualty and Employers Mutual Liability. Other interested parties were made parties defendant in this action. Maryland Casualty provided liability coverage on the driver of the automobile, Charles James Lloyd; Continental Casualty provided liability coverage for Transportation Rentals Corporation, the rental agency from which the automobile was rented; and Employers Mutual provided liability coverage for the employer of the driver, Fairmont Machinery Company.

On July 10, 1958, shortly after midnight, defendant Charles James Lloyd was operating an automobile owned by Transportation Rentals Corporation, a rental agency, and a licensee of Avis Rent-A-Car Corporation, in Mercer County, West Virginia. There were four

men in the car, the passengers being Tony DeMoss, Mike Butler, and Paul Frazier. All four of the men were employees of defendant Fairmont Machinery Company, located in Fairmont, West Virginia. The automobile went out of control and struck some house trailers, parked in a lot beside the road, owned by defendant James A. Tabor, Jr., doing business as Tabor Trailer Sales. Extensive damage was done both to the trailers and to the automobile driven by Lloyd. Defendant DeMoss was also injured in the accident.

Defendant James Tabor, Jr., instituted an action against defendants Charles James Lloyd, the operator of the automobile, and Fairmont Machinery, his employer, in the Circuit Court of Mercer County, West Virginia. Upon conclusion of the evidence in that case, the court directed a verdict in favor of Fairmont Machinery on the ground that Lloyd, at the time of the accident, was acting outside the scope of his employment with Fairmont Machinery. The jury then returned a verdict in favor of Tabor against Lloyd in the amount of $12,-148.05. Upon a new trial, the court directed a verdict, and judgment was entered increasing this amount to $14,-917.42.

Defendant Tony DeMoss brought an action for personal injuries in the Circuit Court of Marion County against Lloyd. This action resulted in a judgment for DeMoss for $3,000.

These judgments have not been paid, and this action was brought to determine liability on the part of the three above-mentioned defendant insurance companies, and if liability be found, the amount which each of the three interested insurance companies should contribute. Defendants Tabor and DeMoss, who secured the judgments, claim that all three insurance companies are liable.

At the time of the accident, Lloyd, the operator of the automobile in question, was an employee of the sales department of Fairmont Machinery, which is located at Fairmont, West Virginia, in the northern part of the state. His territory included the southern part of West Virginia, and, in calling upon customers, he was required to travel by car. A few days before the accident occurred, Fairmont Machinery made arrangements with the Fairmont office of Transportation Rentals to make a rental automobile available to Lloyd at Charleston, West Virginia. Two days prior to the accident Lloyd flew to Charleston, picked up the car, and signed a rental agreement. On the day prior to the accident, Lloyd made arrangements to meet the three passengers later in the same evening. After meeting, the four men had dinner together about 8:00 o'clock. Having finished dinner, they went to an establishment known as Club 52, arriving at approximately 10:00 o'clock, and remaining there for about one hour. The accident occurred as the men were proceeding from Club 52 to a drive-in restaurant.

Due to the number of defenses put forth on the part of the insurance companies, and the various cross claims involved in this action, this opinion will be divided into three parts for the sake of clarity.

1. The question of liability of the insurance companies.

2. The cross claims between the parties.

3. Apportionment of liability among the three insurance companies.

### Liability.
### Maryland Casualty Company.

This company, the plaintiff herein, admits liability. Its contentions will be considered later under the section of this opinion dealing with apportionment of liability.

### Continental Casualty Company.

It is the contention of this insurance company that the renter of the automobile in question was Fairmont Machinery; that Lloyd was merely the "driver"; and that a "driver" is not covered while acting outside the scope of his employment. It is further contended that these facts bring into operation a part of Con-

tinental's policy under exclusions. Exclusion D(9) provides:

"This policy does not apply to: (D) any liability of the renter * * * or of the driver * * * with respect to bodily injury to, sickness, disease or death or damage to property caused in whole or part by an automobile insured hereunder * * * while being operated * * * (9) by a driver outside his usual and customary employment by the renter, or outside his regular and usual employment for the renter; * * *"

■ There is no need to decide whether Lloyd was acting within the scope of his employment, as it is the finding of this Court that the defendant Lloyd was an additional renter signatory to the rental agreement, so that coverage would be afforded to him as a renter, whether or not he was acting within the scope of his employment as a driver with Fairmont Machinery. This finding is supported by the facts of the case. When Lloyd picked up the car at Charleston, he was required by Lambert, the manager of Transportation Rentals, to sign the Standard Rental Agreement for the Avis car. Even though he knew that Fairmont Machinery had made arrangements for the rental of the car for the use of Lloyd, the rental agreement was made out and signed by Lloyd as "renter". Lambert stated that the reason he required Lloyd to sign personally as renter was that he wanted the individual who took the car to be responsible for compliance with the instructions and regulations in the Standard Rental Agreement. This was standard practice with Transportation Rentals, where a company ordered an automobile to be furnished to one of its employees. The automobile rental agency required the employee to sign individually as "renter" in order that they could hold the individual taking the car responsible for bringing the car back and abiding by all the covenants contained in the rental agreement, including the care and use of the car.

The Continental policy, insuring Transportation Rentals, the owner of the Avis car, which was being rented to Transportation Rentals, provided that the word "'insured' includes the named insured and also includes (1) any person * * * or corporation to whom an automobile has been rented without a chauffeur (herein referred to as 'renter'); * * *" All of the terms of the Continental policy are incorporated by reference in the "Standard Rental Agreement" by which Transportation Rentals rented the automobile to Fairmont Machinery. This Standard Rental Agreement specifically provides that the word "renter", as used therein, includes "any additional renter signatory hereto". Therefore, Lloyd, as a signatory to the Standard Rental Agreement, was a "renter" within the meaning of the Standard Rental Agreement, and the Continental policy afforded protection to the renter thereunder. As a "renter", he was a person insured by the Continental policy. Other provisions of the rental contract also lend support to the view that the person signing the rental contract is considered a renter.

1. The space for signature is marked "renter".

2. The first sentence of the rental agreement reads "In consideration of the covenants herein contained, the undersigned Lessor hereby leases to the undersigned Lessee, hereinafter called 'Renter' (including therein any additional renter signatory hereto) * * * the motor vehicle described in this agreement, * * *"

3. The following seven covenants begin with words similar to "Renter agrees * * *" Some of these covenants are such that only a signer who intended to be a driver of the car could make; for example, covenant number four: "Renter agrees that he will not operate said vehicle outside this state and such other states as may be specifically named herein * * *" Covenant number three is another such example: "Renter covenants and agrees that said vehicle will not be operated in violation of any law

governing the use or return thereof, or in violation of any of the other terms and conditions set out on the reverse side hereof."

Continental has filed a cross claim against Lloyd and Fairmont Machinery. It claims that there is a special provision in its policy excluding coverage for injuries to DeMoss, a passenger in the automobile, and cites Exclusion B of its policy, as follows:

"This policy does not apply to: (B) any liability of the renter or driver * * * with respect to bodily injury to * * * (2) any person sustained while riding in * * * any of the automobiles insured hereunder;"

Continental admits that this section of their policy is in violation of a West Virginia statute, W. Va. Code, Ch. 33, Art. 6, § 29 (Michie 1959 Supplement), which provides:

"No insurer shall issue any policy of bodily injury or property damage liability insurance which excludes coverage to the owner or operator of a motor vehicle on account of bodily injury or property damage to any guest or invitee who is a passenger in such motor vehicle."

Continental's contention is that the operation of the statute is to bring into effect paragraph 6 of the rental contract, which provides:

"Renter expressly agrees to indemnify the insurer of said vehicle for any and all loss, damage, cost and expense paid or incurred by it due to injuries or damages sustained by occupants of said vehicle *in states where the law makes Lessor or the Insurer liable for such injuries* or where such injuries or damages resulted from operation of said vehicle *in violation of any of the terms and conditions of this rental agreement.*" (Emphasis ours.)

Upon this paragraph, Continental bases its cross claim. It is first contended that if Continental is found liable in this action, it is entitled to indemnity from defendants Lloyd and Fairmont Machinery because the law in the State of West Virginia through the code section quoted above, makes the insurer liable for such injuries. Such is not the case. The code section does not make the insurer liable, but merely provides that in a certain type of policy, insurance on the passenger shall not be omitted.

Continental also urges upon the court that they should receive indemnity for any liability on their part as to the injury to DeMoss, because the vehicle was operated in violation of one of the terms of the rental agreement, paragraph 10 thereof, which states that the renter agrees that the motor vehicle leased to him shall not be operated "By a Driver outside his usual and customary employment by the Renter, or by a Driver outside the regular and usual employment of the Renter;". This contention is refuted by the statements made earlier in this opinion to the effect that Lloyd was not a "driver", but a renter of the vehicle.

It is the holding of this court that the policy of Continental provided coverage of the accident in question, and that Continental is not entitled to any indemnification.

### Employers Mutual Liability Insurance Company.

Employers Mutual depends on the following provisions in their policy to exempt them from liability:

" III. Definition of Insured. The unqualified word 'insured' includes the named insured and also includes * * * (2) under coverages A and B, (applying to bodily injury and property damage) any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, *provided* the actual use of the automobile is by the named insured or with his permission, * * * The insurance with respect to any person or organization other than the named insured

does not apply under division (2) of this insuring agreement: (d) with respect to any hired automobile, to the owner, or a lessee thereof other than the named insured, or to any agent or employee of such owner or lessee; ". (Emphasis added.)

Employers Mutual first contends that Lloyd did not have permission of Fairmont Machinery to use the automobile in question for the purposes in which he was engaged at the time of the accident. It is the finding of this court that he did have such permission.

Lloyd lived in Fairmont, where his employer was located. He was a sales engineer, whose territory was southeastern West Virginia, southwestern Virginia, and a part of eastern Kentucky. The nearest point in his territory was 150 miles from Fairmont, and the farthest point in his territory was 400 miles from Fairmont. He was on the road approximately every week from Monday through Friday. The Company always furnished Lloyd a car for these trips and paid all expenses for it, including the expenses of Lloyd's personal use of the car. He used these cars when away from Fairmont with the knowledge of the Company, for his personal needs, amusement and pleasure, the same as he would use his own car at home. This was the common practice with other sales engineers and the executive force of the Company. The car driven by Lloyd at the time of the accident was hired for him for a period of two months for this same use in traveling his territory. There were no restrictions or regulations, written or verbal, issued by the Company, relative to his use of the car for personal purposes. This is confirmed by Richard C. Love, Vice President of Fairmont Machinery, in charge of operations, and by James W. Forman, Sales Manager of Fairmont Machinery, then Lloyd's immediate superior, who testified that Lloyd had permission to use the car for personal comfort and pleasure at any hour, night or day. Fairmont Machinery paid all the rental for the car, including

its use at the time of the accident. After the accident a substitute hired automobile was delivered to Lloyd for his use, still with no restriction or admonition whatever from the Company about using the car for personal pleasure. The rental on the car was $110 per month, plus 8¢ per mile, all paid by Fairmont Machinery, including mileage for his personal pleasure and comfort. It further appears to this court that it would be entirely inconsistent with logic to hold that a salesman in a distant town would be furnished with a car for business purposes only, and would be required to obtain other transportation to travel back and forth from his place of lodging to a restaurant.

■ Employers Mutual then puts forth the argument that, even if Lloyd was, at the time of the accident, acting with the permission of Fairmont Machinery, there is still no liability. Reliance is placed on § (d) quoted above, exempting fom coverage "the lessees of such hired automobile other than the named insured." I find that Lloyd was not a "lessee of such hired automobile other than the named insured."

■ It is clear that this subparagraph (d) appearing under "Definitions of Insured" refers, with respect to any hired automobile, to the owner (Transportation Rentals) or a person standing in the place of the owner, such as a company which does not own its cars but leases them from another. For example, Employers Mutual did not intend to insure the owner of the hired automobile, in this case, Transportation Rentals. Similarly, Employers Mutual did not intend to insure Transportation Rentals, if, instead of being the owner of the vehicle hired by Fairmont Machinery, Transporation Rentals was merely the lessee thereof. It is common practice today for operators of fleets of motor vehicles to lease such fleets. It would not be unusual to find that an automobile livery, instead of purchasing and owning its fleet of automobiles, leased its fleet, thereby freeing capital for expanded operations. It was doubtless this contingency which subparagraph (d) of

Paragraph III was intended to cover. Employers Mutual contends that Lloyd was not covered because Lloyd was a lessee of the automobile, and was not a named insured under its policy. This is an improper use of the words of the policy. The policy does provide hired car coverage for the named insured as lessee or any agent or employee of the named insured. The reference to "any agent or employee of such owner or lessee" is a reference to an agent or employee of an owner or lessee. The reference to a lessee is to a lessee *other than the named insured.* Fairmont Machinery is the named insured. Fairmont Machinery was the lessee, or renter, of the vehicle. Lloyd was an employee of the named insured, Fairmont Machinery, in Employers Mutual policy. To hold that there is no liability would produce a curious result. If Lloyd had not signed the rental contract, there would be coverage, as he would then have been merely an employee of the named insured, and not a lessee other than the named insured; whereas, if he signed the contract for his employer, he would not be an insured under the policy. This was not the intent of subparagraph (d). It is felt that there is some ambiguity in the exemption, but that the exemption applies to a situation such as follows: One who desires to rent to others a fleet of cars may either buy or lease the fleet. Such a lessee would not be entitled to coverage under Employers Mutual policy because of the above quotation. This type of lessee composes the group which the provision means to exempt. It is not necessary to quote cases in support of the well-recognized rule of law that if any ambiguity exists in an insurance policy, it shall be construed strictly against the insurer.

### Cross Claims.

The cross claim of Continental Casualty has been discussed in this opinion.

 Transportation Rentals has filed a cross claim against Lloyd and Fairmont Machinery for the amount of damage done to the automobile driven by Lloyd and owned by Transportation Rentals. This claim is based on the theory that Lloyd, as a driver, was, at the time of the accident, acting "outside his usual and customary employment by Renter and outside regular and usual employment of the Renter". It is sufficient to say here that Lloyd was a renter himself and not merely a "driver" within the meaning of the rental agreement and the Continental policy.

The cross claim of Fairmont Machinery against Transportation Rentals has effect only if it be found that the policy of Continental Casualty Company does not cover the accident. As such is not the case, this cross claim need not be discussed further.

### Apportionment of Liability.

Two questions must be answered here to determine proper apportionment:

1. Is there one primary carrier and the others excess, or do all carriers occupy the same legal status, none of them being primary carriers?

2. If all carriers occupy the same legal status, how is liability to be apportioned among them?

All three policies contain what is referred to as an "excess insurance clause". These clauses state in effect that the policy shall be excess insurance over any other valid and collectible insurance.

There are many recorded cases dealing with this problem, and the reader must take care not to be confused by the cases wherein one or more of the policies contain limiting clauses other than the "excess clause", as different results may follow from the interpretation of "escape", "excess", and "pro-rata" clauses. Continental Casualty Company v. American Fidelity & Casualty Company, 7 Cir., 1960, 275 F.2d 381; American Surety Company of New York v. Canal Insurance Company, 4 Cir., 1958, 258 F.2d 934.

In the Employers Mutual policy there is a pro-rata provision which the Company argues is the applicable limiting clause. That clause is "Condition 13. Other Insurance", and reads as follows:

"13. *Other Insurance.* If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

This is the standard printed provision in policies relating to other insurance. When this policy was written, however, it was decided to replace it by an "Excess Insurance" endorsement, and this was done by using the regular printed form, but attaching a special endorsement to the policy, reading as follows: (Page 7 of Endorsement 1, which is page 9 of the insurance policy of Employers Mutual):

"*Excess Insurance Clause.* That this policy shall be excess insurance over any other valid and collectible insurance available to the insured against a loss covered hereunder."

So that there would be no mistake as to which clause should govern, another endorsement or writing was placed on the margin of the policy to the side of paragraph 13, referring specifically to the change. This writing was as follows:

"See Excess Insurance Clause, under Page 7 of End. 1."

■ It is crystal clear that paragraph 13, relied upon by Employers Mutual, was cancelled by the Excess Insurance Clause described above. Where a rider or endorsement is added to a policy of insurance making it excess insurance, such rider or endorsement controls over the pro ration clause in the body of the policy. See Appleman Insurance Law and Practice, Section 4914, Volume 8, page 335; Michigan Alkali Co. v. Bankers Indemnity Ins. Co., 2 Cir., 103 F.2d 345.

The case of American Surety Co. v. Canal Insurance Co., 4 Cir., 1958, 258 F.2d 934, cited by Employers Mutual, is not in point. There the language of the limiting clause was exactly the same as Clause 13 above. But in the American Surety case, Clause 13 had not been eliminated or superseded by another general excess coverage clause, as was done in this case. The American Surety Co. case merely follows the general rule that where an excess clause and pro-rata clause appear in concurrently effective automobile liability policies, the pro-rata clause is disregarded and full effect is given to the excess clause, making the pro-rata policy the primary insurance. The reasoning employed in a pro-rata against excess situation has no applicability to the present case where each policy contains an "excess" clause. Here none of the policies expressly provide for pro-rating on the basis of limits of coverage or on any other basis of pro-rating where a hired or non-owned vehicle is involved.

■ It is the opinion of this court that the excess insurance clauses must be completely disregarded, as they are all the same and mutually repugnant, and no one insurance company can be held to have primary liability. This would appear to be the majority view. Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., et al., 9 Cir., 1952, 195 F.2d 958; Insurance Co. of Texas v. Employer's Liability Assurance Corp., D.C.S.D.Cal.D.C.1958, 163 F.Supp. 143; Continental Casualty Company v. St. Paul Mercury Fire and Marine Insurance Co., D.C.S.D.Fla.M.D.1958, 163 F. Supp. 325; Hancock v. Western Casualty & Surety Co., D.C.E.D.Ky.1957, 154 F. Supp. 164.

Here each of the insurance companies insured the driver of the car involved in the accident. So far as this accident was concerned, the risk was the same as to all three insurance companies. I have found no cases holding that one insurance company was primarily liable and one secondarily liable, where the same risk was covered by both companies. The

courts hold the excess insurance clauses to be mutually repugnant and proceed with the question of apportionment of liability. In the case of Continental Casualty Co. v. General Accident Fire & Life Assurance Corp. Ltd., D.C., 175 F. Supp. 713, the court quoted from the opinion of the Oregon Supreme Court in Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 341 P.2d 110, 116:

"In 1952, the United States Circuit Court of Appeals for the 9th Circuit recognized the futility of a sound rule seeking to determine primary and secondary liability between different insurers covering the same risk * * *."

In apportioning liability among the three insurance companies, it is important to know the exact coverage of each policy.

Maryland Casualty was the insurer of Lloyd under a policy against liability for personal injury and property damage, caused by the use by Lloyd of any owned or non-owned automobile. The limits of liability were $10,000 for each person and $20,000 for each occurrence or bodily injury liability, and $5,000 for each occurrence for property damage.

Continental was the insurer of Transportation Rentals and, as the court has held, of Lloyd, the renter of one of its automobiles, under a policy against liability for bodily injury and property damage, caused by the use of rental automobiles owned by Transportation Rentals. The limits of the Continental policy were $100,000 for each person, and $300,000 for each accident, for bodily injury liability, and $25,000 for each accident for property damage liability.

Employers Mutual was the insurer of Fairmont Machinery and, as the court has held, of Lloyd, under a policy of insurance against liability for personal injury and property damage, caused by the use of automobiles owned or hired by Fairmont Machinery. The limits of liability in the Employers Mutual policy were $500,000 for each person and $5,-000,000 for each occurrence for bodily injury, and $1,000,000 for each occur-

rence for property damage by automobile. This policy covered several affiliated companies, including Fairmont Machinery.

After holding that there is no one primary insurer, and that each of the three insurance companies occupy the same legal status, it becomes necessary to apportion liability among the companies.

The courts have not been uniform in selecting a method of apportionment in this type of case. The decisions may be divided into three categories:

1. Liability should be prorated according to the policy limits. Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co. et al., supra.

2. Liability should be ascertained on the basis of the amount of premiums paid to each company. Insurance Co. of Texas v. Employers Liability Assurance Corporation, supra.

3. Each insurer should share equally in the liability. Cosmopolitan Mut. Ins. Co. v. Continental Casualty Co., 1959, 28 N.J. 554, 147 A.2d 529, 69 A.L.R.2d 1115; Continental Casualty Co. v. General Acc. Fire & Life Assur. Corp., D.C.D.Ore. 1959, 175 F.Supp. 713.

The majority of reported cases have adopted the policy limits method of apportionment, but in these cases there have been only two insurers, and the directness of coverage has been equal for both companies. In the Oregon Auto Ins. Co. case, supra, defendant insurance company issued to the driver of the automobile involved in the accident creating liability, a liability policy covering him while he was driving any automobile. Plaintiff insurance company later issued a liability policy to the company owning the automobile, insuring it against liability growing out of the operation of designated motor vehicles, including the automobile involved in the accident. It provided coverage for any person using, with the insured's consent, an automobile covered by the policy. The court first held that "other insurance" provisions were mutually repugnant, and then held that liability should be prorated on the basis of respective policy limits.

In the cited case the policies provided equally direct coverage. One covered the driver, no matter what car he drove, the other covered the car specifically, no matter who drove it.

Some few reported cases have used the second method of apportionment, and, although it does not seem as logical as the policy limit method, where it was used it apparently achieved equity. For example, in the case of Insurance Company of Texas v. Employers Liability Assurance Corporation, supra [163 F.Supp. 147], the two insurance companies involved had issued liability policies, which at the time of the accident named the same company as insured. After holding the "excess insurance" clauses mutually repugnant, the court decided that there was no primary or secondary insurer. The court recognized that there is respectable authority that proration should be on the basis of policy limits, but felt that under the fact situation they were considering, *"it would be more equitable* to require proration according to premiums paid rather than the limits of liability" (emphasis added). In support of this method of proration, the court reasoned thus at page 147: "It is common knowledge that after the first twenty-five or fifty thousand dollars of liability insurance the additional charge for five hundred thousand dollars or a million dollars of insurance is relatively small, and the rate on the larger amounts is considerably less than upon the smaller amounts".

In the case cited, the policies were similar, each covered the same number of vehicles, the risk insured against was approximately the same in both policies, and there was, therefore, no variation in degree of directness in the coverages of the two policies.

The third method of apportionment would not seem to achieve an equitable result, unless the policy limits were somewhat similar, and both policies were somewhat similar with regard to directness. This method has achieved very little popularity in State or Federal Courts, and would not seem to justify further discussion.

If the policy limit method were to be used in the case at hand, the following result would ensue: Continental would be held responsible for 25/1030 of the property damage and 10/61 of the personal injury; Maryland Casualty would be held responsible for 5/1030 of the property damage and 1/61 of the personal injury, and Employers Mutual would be held responsible for 1000/1030 of the property damage and 50/61 of the personal injury. It is obvious that a not too great variation of the above figures would occur if premiums paid were made the basis of apportionment. Under both methods, Employers Mutual would pay nearly all the damages.

The large difference in percentage of liability would not alone be a compelling argument against using the policy limits or premiums paid methods of apportionment. However, none of the cases cited above which used these methods deal with the exact fact situation of the case at hand. In this case there are three insurers, not two, and, whereas the coverages provided in the cases dealing with two insurers were all approximately equally direct, here one insurer, Employers Mutual provided a much more indirect coverage.

One policy, that covering Lloyd personally, was issued by Maryland Casualty to protect against liability for personal injury and property damage caused by the use of Lloyd of any owned or non-owned automobile. The policy was issued to cover one man, the man whose negligence caused the accident resulting in liability.

Another policy, issued by Continental to Transportation Rentals, covered the automobiles owned by Transportation Rentals when driven by persons renting the automobiles. This policy directly covered the automobile which was involved in the accident when driven by a renter. It is also noteworthy that part of the payment of a renter to Transportation Rentals was to cover the insurance premium paid by Transportation Rentals

to Continental for this policy. This indicates a very direct coverage. Part of the total policy premium was paid upon every rented car, to cover that particular car.

The third policy was issued by Employers Mutual to Fairmont Machinery and is an extremely broad policy, covering liability resulting from the use of *any owned or hired automobile by any person* so long as he has the permission of the insured to use the car. This policy resulted in coverage in this case because the automobile involved in the accident came within the general requirement of a hired car. Lloyd was covered because he fell within the general classification of a person driving with the consent of the insured.

Granted that it has been decided that no one insurer is a primary insurer and none are secondary insurers. Granted also that each of the three insurance policies does provide coverage in this case. Yet, it must be kept in mind that the courts in the above-mentioned cases were seeking to do justice, and arrive at an equitable result. Their opinions show that the various methods of apportionment were adopted because in a particular fact situation, one or the other of them would result in the more equitable result. As stated in the Cosmopolitan Mutual case, supra, [28 N.J. 554, 147 A. 2d 534] "We therefore conclude that as both companies stand on an equal footing *equity requires* an equal apportionment of the amount of the settlement and expenses." (Emphasis added.)

It appears to this Court that in various factual situations, each of the above methods would be just, but the converse is also true, in that in other factual situations, each would lead to unjust results. Therefore, since this Court is of the opinion that this case is different factually from the above-cited cases, it is not felt that any of the three methods set out above would produce equity in the apportionment of liability. In the usual situation, where one policy covers the specific automobile, and another covers the specific individual driving the automobile, the coverages would be on the same level of directness, and one or more of these methods would no doubt achieve a just result.

Here we have one company insuring the driver specifically, one insuring the car, as a part of a designated group of cars, and a third insuring *any* automobile that *any* person drives with the consent of Fairmont Machinery. The policy written by Employers Mutual is certainly not on the same level of directness as the policies of the other two insurers.

Remembering again that equity is the goal of any method of apportionment, it is the opinion of this Court that it should take into consideration the limits of the policies, the directness or indirectness of coverage, and all other circumstances, to arrive at a just apportionment.

Maryland Casualty certainly provided a very direct form of coverage, insuring but one man, Lloyd, the man responsible for the accident. Yet it must be remembered that the limits of the Maryland Casualty policy, as set out above, were the lowest of the three policies under consideration. Taking both of these factors into consideration, it is the holding of this Court that Maryland Casualty be held responsible for 20 percent of the total liability.

Continental's policy is also very direct in its coverage, covering a specified group of automobiles when driven by a renter such as Lloyd. As was shown previously, this company's policy limits are greater than Maryland Casualty's, but not so great as the more indirect coverage of Employers Mutual. Taking all the facts into consideration, it is the holding of this Court that Continental be held responsible for 40 percent of the total liability.

Employers Mutual's policy contains by far the largest policy limits as set out previously in this opinion. Yet the coverage afforded in this policy was very broad, and, as to the automobile involved in the accident and its driver, much more indirect than the coverage afforded in the other two policies. The policy covered, to state it once again for emphasis, *any*

owned or hired vehicle when driven by *any* person with the consent of Fairmont Machinery. Again considering all the facts set forth in this opinion, it is the holding of this Court that Employers Mutual be held responsible for 40 percent of the total liability.

This opinion is adopted as the findings of fact and conclusions of law of this Court. Counsel for plaintiff Maryland Casualty may prepare an order according to the views expressed herein.