LEROY MILLARD JOHNSON

*v.*

CONTINENTAL CASUALTY COMPANY

(No. 13202)

Submitted October 10, 1972.    Decided December 21, 1973.

Petition for Rehearing Filed January 21, 1974.

Rehearing Denied March 8, 1974.

*Archibald McDougall* for appellant.

*Clarence E. Martin, Jr., Martin & Seibert* for appellee.

HADEN, JUSTICE:

Leroy Millard Johnson appeals from a final judgment of the Circuit Court of Jefferson County which denied him satisfaction of a personal injury award and beneficial coverage from a contract of non-owner's automobile liability insurance issued by the appellee, Continental Casualty Company to its assured, Wayne McAboy, appellant's judgment debtor.

On September 24, 1964, Johnson obtained a valid judgment for two thousand dollars against McAboy in the Circuit Court of Jefferson County founded upon personal injuries suffered by him from an automobile accident in which he was a guest passenger in a vehicle operated by McAboy. Johnson caused execution to be issued on the judgment on October 5, 1964, which was returned unsatisfied on October 7, 1964.

Then Johnson instituted this action against Continental, asserting an obligation on behalf of the insurance company to satisfy and pay the judgment rendered against its assured.

By answer, Continental denied that McAboy was insured by them with respect to the vehicle in which appellant was a guest passenger because the policy issued McAboy was a non-owner's or "operator's" policy which, according to its terms, excluded from coverage the operation by the assured of any vehicle owned by him, his spouse, or any member of his household.

By way of explanation, the evidence indicated that McAboy had purchased this rather uncommon type of coverage to satisfy the minimum requirements of *Code* 1931, 17D-1-1, *et seq.*, as amended, this State's Safety Responsibility Law, after having been convicted of "driving while under the influence" in an incident

otherwise unrelated to this case. Apparently also, Continental entered into its contractural relationship with McAboy by accepting him as an assigned insurable risk, an accommodation encouraged by the insurance statutes. See, *Code* 1931, 33-20-15 and 33-6A-4, as amended. The vehicle which was involved in the accident causing injuries to Johnson had been purchased by McAboy but had been titled in his mother's name. Thus, the question of ownership and coverage of the vehicle under this type of policy became an issue in the case.

At the trial which was conducted by the court, without a jury, Johnson strongly contended the automobile was not owned by McAboy but rather by his mother in whose name it was titled by the department of motor vehicles. Further, although owned by a member of McAboy's household, his mother with whom he was residing, the car was being operated by McAboy in the capacity of "chauffeur," a special category recognized by statute and a "covered" operation under the terms of Continental's policy. However, on contrary evidence adduced by Continental that McAboy bought and paid for the automobile and that his mother had never operated it or had been chauffeured in it as a passenger, the court resolved the question of ownership by holding that, in fact, McAboy owned the automobile.

Although the appellant asserts here error in the trial court's determination of ownership on the primary basis that the automobile was titled in the assured's mother's name, we are not disposed to reverse on this question. First, this Court has recently recognized and held that the title certificate issued by the department of motor vehicles is not dispositive of the question of ownership and may be rebutted by other evidence. *Commercial Credit Corporation v. The Citizens National Bank of Point Pleasant, West Virginia,* 148 W.Va. 198, 133 S.E.2d 720 (1963). Second, we will not reverse a finding of fact by a trial court unless the evidence demonstrates it to be clearly wrong. *Samsell, Director, et al. v. The State Line*

*Development Company, Inc.,* 154 W.Va. 48, 174 S.E.2d 318 (1970); *In re: Thacker,* 152 W.Va. 455, 164 S.E.2d 301 (1968). Third, inasmuch as the questioned "non-owner's" policy excludes coverage to a motor vehicle owned by the assured or by a member of his household, except under special circumstances not shown in this case, Johnson's case, to succeed, must be supported from a source *dehors* the policy.

As an alternative ground in support of his claim against the insurance company, Johnson also asserted that, regardless of the express vehicular exclusions contained in McAboy's policy, Continental was liable to him because organic provisions of this State's insurance statutes require all companies conducting business in this jurisdiction to indemnify from harm any guest passenger who travels in an automobile operated by an insured driver. As authority he directs the Court to *Code* 1931, 33-6-29, as amended, which provides:

> "No insurer shall issue any policy or bodily injury or property damage liability insurance which excludes coverage to the owner or operator of a motor vehicle on account of bodily injury or property damage to any guest or invitee who is a passenger in such motor vehicle."

This statute, it appears, may be unique to this jurisdiction. It has not been previously before this Court; it and the facts of this case present a question of first impression for decision.

In the trial court, Continental successfully contended that *Code* 1931, 33-6-29, as amended, does not provide coverage where there is none by the contract of insurance and that Section 29, interpreted correctly, must be construed in light of The Safety Responsibility Act which permits the issuance of two separate types of automobile liability policies, owner's and operator's—both of which meet the requirements of that law as to ability to respond financially in damage indemnification to innocent victims of automobile accidents; that a valid non-owner policy, by

its general and specific terms, excludes coverage to the assured, and those claiming through him, when he is operating an "owned" vehicle. Consequently, the vehicle was uninsured and thus, a passenger in that vehicle cannot force the insurance company to respond in damages for a judgment against its assured who was not "insured" while operating this vehicle.

Viewed from a slightly different perspective, the contention may be restated: that a policy lawfully issued pursuant to a special law, The Safety Responsibility Act, which excludes coverage in the operation of owned vehicles, controls over the language of a general insurance statute which says no automobile policy shall be issued which excludes coverage to the operator of an automobile on account of harm to a passenger in the vehicle.

Condensed to a more simple exposition the appellee asserted that, as to coverage, the language of the insurance policy contract excluding coverage to the assured, controls over language of the statute preventing exclusion to assureds on account of injuries to passengers. This is the issue which we must decide.

At the outset, we note our basic agreement with appellee that The Safety Responsibility Act recognizes and authorizes, as meeting its minimum requirements and objectives, the issuance of both owner's and operator's (non-owner's) automobile liability policies. Section 10 of Article 4 (Code 1931, 17D-4-10, as amended) provides:

> "Proof of financial responsibility may be furnished by filing with the commissioner [of motor vehicles] the written certificate of any insurance carrier duly authorized to do business in this State certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate . . . shall designate by explicit description or by appropriate reference all vehicles covered thereby, *unless the policy is issued to a person who is not the owner of a motor vehicle.*" (Emphasis supplied.)

If after reading the clear language of the above section, there remains any doubt that this legislation contemplates the issuance of two separate and distinct types of liability insurance policies, it is dispelled by further reference to Section 12 (b) which delineates *owner's* policies as contrasted with Section 12 (c) defining *operator's* policies. *Code* 1931, 17D-4-12, as amended. A survey of the entire act substantiates the conclusion that the statutory scheme recognizes these differences in policy coverage.

Appellee relies upon two strikingly similar cases passing upon the validity of non-owner policies and the liability of the insurer to third persons injured by the operation of a motor vehicle *owned* by the assured. Both jurisdictions there involved were operating under safety responsibility acts which, like our Chapter 17D, recognized and approved the issuance of operators' policies as well as owners' policies. In *Kyle v. McCarron,* 201 Pa. Super. 403, 192 A.2d 253 (1963), applying the terms of the policy, the court held that the insurer was not liable for injuries sustained by a passenger in an automobile which the assured owned and was operating at the time of an injury. The same result obtained in *Booth v. American Casualty Company,* 261 F.2d 389 (4th Cir. 1958) where the court affirmed a ruling denying liability on the policy of an assured who was driving an owned vehicle when he negligently injured another motorist.

Also appropriate to the problem posed by the instant case was the Pennsylvania court's recognition that the legislative body had authorized issuance of non-owner's policies in their safety responsibilities act and that ". . . the policy is not in conflict with the law, and the insurance company cannot be penalized for limiting its liability in the manner prescribed by statute." *Kyle v. McCarron, id.* at page 258 of the Atlantic Report. See also, *Wasilko v. Home Mutual Casualty Company,* 210 Pa. Super. 322, 232 A.2d 60 (1967); *American Mutual Liability Insurance Company v. Meyer,* 115 F.2d 807 (3d Cir. 1940).

The distinguishing feature of the *Kyle* and *Booth*

decisions from the case at hand is that there both insurance companies, in denying liability under the exclusions of their policies, could and did rely upon the fact that they were satisfying and proceeding in accordance with the requirements of the Pennsylvania and South Carolina safety responsibility acts and were justified in the issuance of non-owner policies which may or may not have provided coverage to third persons injured by their assureds. In neither case were those insurers faced with affirmative statutory declarations protecting guest passengers injured in automobiles owned or operated by an assured. Our statute commands that "No insurer shall issue any policy [automobile liability] . . . which excludes coverage to the owner or operator . . . on account of . . . injury . . . to any guest [passenger] . . . ." *Code 1931, 33-6-29 supra.* This insurer has denied such coverage based upon the exclusionary language of its policy with McAboy. Is this permissible under the law? For the following reasons, we answer in the negative.

In 1957, the West Virginia Legislature enacted Chapter 33, Article 6 of the West Virginia Code, entitled: "The Insurance Policy." Section 1 of the article defines the scope of the chapter as applying to all insurance policies, except "reinsurance or ocean marine insurance and foreign trade insurance." As a general rule of statutory construction applicable here, the exclusion of one subject or thing in a statute is the inclusion of all others. *State ex rel. City of Charleston v. Hutchinson,* 154 W.Va. 585, 176 S.E.2d 691 (1970) ; *State ex rel. Bache & Co. v. Gainer,* 154 W.Va. 499, 177 S.E.2d 10 (1970). As Section 29 of Article 6 applies specifically to "operator[s]" we hold the article in its general and specific provision to apply to non-owner policies.

The language of *Code 1931, 33-6-29,* as amended, is clear and unambiguous, and the legislative intent is readily discernible. The Legislature has provided therein expanded protection to innocent guest passengers who are injured upon the highways of this State by requiring

that no policy shall be issued which excludes coverage to an operator on this basis.

Additionally, it must be observed that Section 29 was enacted subsequent to the enactment of the State's safety responsibility law found in Chapter 17D of the *Code* 1931, as amended, with the obvious intent *inter alia,* of supplementing existing insurance provisions providing protection to innocent victims of automobile accidents. Specifically *Code* 1931, 33-6-29, as amended, provides blanket protection to that class of persons who are guest passengers.

In *Maryland Casualty Co. v. Continental Casualty Company,* 189 F.Supp. 764 (D.C.N.D. W.Va. 1960), the district court construed Section 29 in an action involving two insurance companies and cross-claims against their assureds which sought an adjudication of their respective liabilities emanating from a motor vehicle collision involving their assureds. One policy sued upon excluded coverage for any person's injuries sustained while riding in insured vehicles; this provision, as being contrary to Section 29, was relied upon by the non-complying insurance company as entitling it, if liable, to indemnification from its assured who operated the covered automobile in violation of the policy exclusion at the time of the accident. The court said no: "The code section does not make the insurer liable, but merely provides . . . insurance on the passenger shall not be omitted." *Id,* at page 769. This limited interpretation by a federal court to a cross-action between the insurance company and its assured does not control the disposition of this case. By analogy, liability which may or may not exist as between Continental and McAboy is of no concern on this appeal and the *Maryland Casualty* case is not authority for excusing Continental from responding to a judgment against its assured.

The McAboy policy, in that it was apparently written to exclude coverage to guest passengers who are injured in vehicles owned by the insured, conflicts with the

protection afforded under the statute. Where such conflict exists and the policy was issued subsequent to the enactment of the statute, as here, the offending provision of the policy must yield. *Code* 1931, 33-6-17, as amended, provides:

> "Any insurance policy, rider, or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this chapter, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this chapter."

This section clearly mandates that automobile liability policies issued subsequent to its effective date, as in the instant case, shall be construed in accordance with Section 29 of Article 6.

Significantly, another district court serving West Virginia recently held inoperative exclusionary provisions of a policy purporting to avoid uninsured motorist coverage mandated by *Code* 1931, 33-6-31, as amended. The court, speaking through Judge Kenneth K. Hall, said:

> "The statute makes no provision for policy exclusions to defeat the purposes and objectives of the insurance coverage. The statute does not give and then take away. The exclusion provisions in the two policies, however they may be characterized by counsel in their briefs, are not authorized by the controlling language of the statute and must be held void and inoperative." *State Farm Mutual Automobile Insurance Company v. United States Fidelity & Guaranty Company,* 358 F.Supp. 1143, 1145 (D.C.S.D. W.Va. 1973).

The general rule which governs the case before this Court was aptly put in *Tulley v. State Farm Mutual Automobile Insurance Company,* 345 F.Supp. 1123, 1128 (D.C.S.D. W.Va. 1972) as follows:

"These cases all establish that the controlling instrument is the statute and that provisions in the insurance policy that conflict with the requirements of the statute, either by adding to or taking from its requirements are void and ineffective. . . ." [Citing: *Bryant v. State Farm Mutual Automobile Insurance Co.*, 205 Va. 897, 140 S.E.2d 817 (1965)]

Whether we apply the provisions of *Code* 1931, 33-6-17, as amended, or the decisions of *United States Fidelity & Guaranty Company* and *Tulley* cases, the ultimate result is to assure that the protection extended by the Legislature to guest passengers is effectuated either by construing the insurance policy as including the statutory protection afforded, or by voiding the policy provisions in conflict with the requirements of the statute. Adopting either rationale, the public policy of the statute is served and a contrary interpretation of an insurance policy to the detriment of the class protected by the statute is avoided.

Some years ago this Court recognized the State's compelling interest in the regulation of the insurance industry. That business is quasi-public in character and the Legislature may validly exercise its police powers and prescribe the terms and conditions on which the sale of automobile liability insurance policies may be conducted. See, *Swearingen v. Bond, Auditor,* 96 W.Va. 193, 122 S.E. 539 (1924). Apprehending no legal reason to inhibit the policy and objectives of legislation designed to enhance protection for guest passengers who are innocent victims of highway accidents, we apply the statute as written and give it full force and effect.

Accordingly, the judgment of the Circuit Court of Jefferson County is reversed and judgment for the appellant in the amount of two thousand dollars, with interest and costs, is hereby awarded.

*Reversed.*