655 S.E.2d 94

**Collett L. KEEFER, II, Plaintiff Below, Appellee,**

v.

**Angela Mae FERRELL, a/k/a Angela Mae White; and Kenneth D. Hess, Defendants Below, Appellees,**

**Farm Family Casualty Insurance Company, Appellant.**

**No. 33310.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 24, 2007.

Decided Nov. 8, 2007.

Concurring Opinion of Justice Starcher Dec. 6, 2007.

Dissenting Opinion of Justice Benjamin Dec. 19, 2007.

350

Lou Ann S. Cyrus, Heather B. Lord, Shuman, McCuskey & Slicer, PLLC, Charleston, for the Appellant, Farm Family Casualty Insurance Company.

PER CURIAM:

The appellant herein, Farm Family Casualty Insurance Company (hereinafter "Farm

Family"), appeals from an order entered April 27, 2006, by the Circuit Court of Mason County. By that order, the circuit court granted summary judgment in favor of the plaintiff below and appellee herein, Collett L. Keefer, II (hereinafter "Mr. Keefer"),[1] ruling that the Farm Family policy of motor vehicle insurance at issue in these proceedings provided uninsured motorist (hereinafter "UM") coverage to Mr. Keefer. On appeal to this Court, Farm Family argues that the circuit court erred by finding that the Farm Family policy provided coverage for the underlying accident. Upon a review of the parties' arguments, the pertinent authorities, and the record designated for appellate consideration, we affirm the decision of the Mason County Circuit Court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts of this case are not disputed by the parties. On September 2, 2002, at approximately 8:20 p.m., Mr. Keefer was operating a 1972 Allis–Chalmers 180 farm tractor on State Route 87 in Leon, West Virginia, when he was struck from behind by an automobile being driven by one of the defendants below and appellees herein, Angela Mae Ferrell (hereinafter "Ms. Ferrell"). Mr. Keefer stated that he was operating the tractor on State Route 87 in order to load the tractor onto a trailer that was attached to a 2002 Dodge truck; the tractor, the trailer, and the Dodge truck were all owned by another of the defendants below and appellees herein, Kenneth D. Hess (hereinafter "Mr. Hess"). Mr. Hess's truck was insured by a policy of motor vehicle insurance issued to Mr. Hess by Farm Family.[2] At the time of the accident, Mr. Keefer and the tractor were ap-

proaching, but had not yet reached, the truck and trailer, both of which were parked in a driveway adjacent to State Route 87; in preparation for the anticipated tractor loading, the trailer had been hitched to the truck, and the trailer's loading ramps had been dropped to the ground. Mr. Keefer and the tractor were approximately twenty-five to thirty feet away from the truck and trailer when Mr. Keefer slowed down to turn into the driveway and the collision with Ms. Ferrell's vehicle occurred. The accident report completed by the police officer responding to the scene placed the tractor at the entrance to the driveway showing that it stopped immediately inside the driveway and was no longer on State Route 87.

On September 2, 2004, Mr. Keefer filed a civil action against Ms. Ferrell and Mr. Hess to recover for the injuries he sustained in the above-described accident. In his complaint, Mr. Keefer alleged that Ms. Ferrell was an uninsured motorist and sought recovery under the UM provisions of Mr. Hess's insurance policy[3] with Farm Family. Mr. Keefer also alleged that Mr. Hess had been negligent in his direction of Mr. Keefer's efforts to load his tractor onto the trailer.[4] With respect to his claim for UM benefits, Mr. Keefer asserts that he is entitled to the UM coverage provided by Mr. Hess's business auto policy. On December 14, 2004, Farm Family filed "Farm Family's Notice of Special Appearance and Counterclaim for Declaratory Judgment" to request the circuit court to determine whether Mr. Hess's Farm Family policy provided UM coverage to Mr. Keefer.

The policy of motor vehicle insurance at issue herein is the "Amended New (Business Auto) Policy" issued to Mr. Hess by Farm Family with coverage dates from November

---

1. Mr. Keefer has not made an appearance in Farm Family's appeal to this Court.

2. The coverage of this business auto policy is discussed more fully, *infra*. The tractor was not insured under this policy of motor vehicle insurance.

3. Although Mr. Hess had two policies of motor vehicle insurance with Farm Family that provided UM coverage, only one of those policies, *i.e.*, the business auto policy, appears to be applicable

to the case *sub judice*. The other policy, denominated a personal auto policy, insured two other vehicles owned by Mr. Hess, neither of which were involved in the instant matter.

4. As Mr. Hess's liability insurer, Farm Family is providing a defense for Mr. Hess with respect to Mr. Keefer's negligence claims, which are still pending in the circuit court and are separate from the instant appeal.

15, 2001, to November 15, 2002. The named insureds on this policy are Kenneth D. Hess and Bert Hess, with the insured business designated as "individual" and the name of the insured business identified as "farmer." The persons listed as "drivers" on the policy's declarations page are Kenneth Dean Hess, Bert C. Hess, and Collett L. Keefer, II; the covered motor vehicles are the 2002 Dodge truck, discussed above, and a 1990 GMC truck.

Of particular relevance to Mr. Keefer's claims, the Farm Family policy contains the following definitions and coverage terms applicable to the UM coverage provided thereunder:

> "Insured" [means] "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage."
>
> . . . .
>
> WHO IS AN INSURED [under the UM endorsement to the policy]
>
> 1. An individual, then the following are "insureds":
>
> a. The named insured and any "family members".
>
> b. Anyone else "occupying" or using a covered "auto" or temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

Additionally, the policy defines the term "occupying" as "in, upon, getting in, on, out or off."

During the course of the proceedings below, Farm Family moved for summary judgment. By order entered April 27, 2006, the circuit court ruled as follows:

> As noted by the West Virginia Supreme Court of Appeals in *Cleaver v. Big Arm Bar & Grill, Inc.*, 202 W.Va. 122[, 502 S.E.2d 438] (1998), "When ... the 'use' of a vehicle is a question for insurance purposes due to the separation of an individual from a vehicle at the time of an accident, the court must determine whether there is

a causal connection between the motor vehicle and the injury." Additionally, the [']causal connection must be "more than incidental, fortuitous, or but for.[']" *See Baber v. Fortner [by Poe]*, 186 W.Va. 413, 417[, 412 S.E.2d 814, 818] (1991); *Nationwide Mutual Insurance Co. v. Shumate*, 63 F.Supp.2d 745[ (S.D.W.Va.1999)]. Essentially, the injury must be foreseeably identifiable with the normal use of the vehicle. *Id.*

> The evidence before the Court in this matter demonstrates that a normal use of the insured vehicle, the 1992 Dodge truck, was to load and haul the tractor involved in this accident. In fact, the testimony of both the Plaintiff [Mr. Keefer] and Mr. Hess at their depositions revealed that their typical pattern was for Mr. Hess to drop the ramps to the trailer, attached to the truck, and that the Plaintiff would then load the tractor onto the attached trailer. In this matter that is precisely the course of action that was taking place as the Plaintiff was struck by the uninsured motorist [Ms. Ferrell]. Therefore, applying the rationale from *Baber* and *Cleaver*, it is clear that this was the foreseeable result of a normal use of this vehicle, and, therefore, under the law, the Court must find that the insurance coverage at issue in this matter extends to the Plaintiff.

> Additionally, the Plaintiff argues that he was, essentially, in the process of getting on the insured vehicle, and, therefore, "occupying" it, albeit while on a tractor. The Plaintiff further contends that coverage extends to those either using or occupying the insured vehicle. As defined by the terms of the policy in question, the word "'occupying' means in, upon, getting in, on, out or off." In this matter, the Plaintiff was essentially in the course of getting on the trailer attached to the vehicle, and, under the above definition was "occupying" it. Therefore, applying the terms of the policy in question, the Court hereby finds and concludes that as a matter of law, the Plaintiff was in fact "getting on" the vehicle, and, thus "occupying" it, for purposes of the insurance coverage.

Ultimately, the Court should, and hereby does, find and conclude that applying the facts before it to the applicable law in this area, the insurance policy at issue extends to cover the Plaintiff in this case, and, therefore, Farm Family Casualty Insurance Company's Motion for Summary Judgment should be, and hereby is, denied. Furthermore, given that no material issues of fact exist to preclude the Court from entering judgment as a matter of law in favor of the Plaintiffs, the Court . . . hereby finds and concludes as a matter of law that judgment should be, and hereby is, entered in favor of the Plaintiff declaring that the insurance policy at issue in this matter extends to cover the Plaintiff in this case.

From this adverse ruling, Farm Family now appeals to this Court.

## II.

### STANDARD OF REVIEW

■ The sole issue presented by the instant appeal is whether the policy at issue herein provided UM coverage for Mr. Keefer's injuries. We previously have held that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.,* 205 W.Va. 216, 517 S.E.2d 313 (1999). Moreover, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. pt. 1, *Tennant v. Smallwood,* 211 W.Va. 703, 568 S.E.2d 10 (2002). Finally, we accord a plenary review to questions of law: "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). Guided by these standards, we proceed to consider the arguments herein raised.

## III.

### DISCUSSION

On appeal to this Court, Farm Family assigns error to the circuit court's ruling finding that the policy of motor vehicle insurance Farm Family issued to Mr. Hess provided UM coverage for the injuries Mr. Keefer sustained while driving Mr. Hess's tractor. Specifically, Farm Family contends that because Mr. Keefer was not occupying or using the truck, he was not an insured as contemplated by the applicable policy language. We will consider these arguments in turn.

### A. *Occupying*

Farm Family first argues that the circuit court erred by finding that Mr. Keefer was "occupying" a covered vehicle at the time of the accident. In support of its argument, Farm Family relies upon the definition of "occupying" contained in the subject policy of insurance and asserts that Mr. Keefer was not "in, upon, getting in, on, out or off" of the covered vehicle, *i.e.,* the truck, at the time of the accident insofar as he was approximately twenty-five to thirty feet away from the truck at the time of the collision.

■■ When considering whether a policy of insurance provides coverage for a particular claim of loss, we must look to the specific wording of the policy itself. In this regard, we previously have held that, "[w]here provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syl. pt 2, *Shamblin v. Nationwide Mut. Ins. Co.,* 175 W.Va. 337, 332 S.E.2d 639 (1985). *Accord* Syl., *Keffer v. Prudential Ins. Co. of America,* 153 W.Va. 813, 172 S.E.2d 714 (1970) ("Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."). Likewise, "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syllabus point 1, *Soliva v. Shand, Morahan & Co., Inc.,* 176 W.Va. 430, 345 S.E.2d 33 (1986), *abrogated on other grounds, National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), *modified on other grounds, Potesta v. United States Fid. & Guar. Co.,* 202 W.Va. 308, 504 S.E.2d 135 (1998).

■ The specific language of the instant policy provides UM coverage to "[a]nyone else 'occupying' . . . a covered 'auto'. . . ." The parties do not dispute that Mr. Keefer satisfies the "anyone else" reference or that the truck parked in Mr. Hess's driveway, to which the trailer was attached and on which the tractor was going to be loaded, is a "covered auto" under the pertinent policy language. The sole dispute is whether Mr. Keefer was "occupying" said truck. On this point, the insurance policy further defines the term "occupying" as "in, upon, getting in, on, out or off." We find this definition of "occupying" to be plain, and further conclude that Mr. Keefer was, in fact, "occupying" the covered truck insofar as he was in the process of "getting on" it when he was struck by Ms. Ferrell. All that is required under the above-quoted policy language to satisfy the definition of "occupying" is a finding that Mr. Keefer was "getting on" to the covered truck.

The undisputed testimony below indicated that the sole reason Mr. Keefer was driving the tractor, as well as the sole reason for the truck being in the driveway, attached to a trailer, with the trailer's ramps down, was to load the tractor onto the truck. In his deposition, Mr. Hess testified as follows:

A [by Mr. Hess] I pulled [the truck and trailer] up in the driveway, give ourselves enough room for me to put the ramps [on the trailer] down . . . .

Q [by Mr. Casey, attorney for Mr. Keefer] So you already had it ready to load?

A I had the ramps down and the trailer was prepared for the tractor.

. . . .

A I put the ramps down and was standing there along the road waiting for him [Mr. Keefer] to pull in . . . .

May 5, 2005, Dep. of Kenneth D. Hess, at pp. 16–17. Similarly, Mr. Keefer testified as follows:

Q [by Mr. Power, attorney for Mr. Hess] Why had you decided to go to where the tractor was after you finished haying that day?

A [by Mr. Keefer] We was moving the tractor to another farm.

. . . .

Q And where did he [Mr. Hess] stop?

A Right there where you turn into the private driveway.

Q Did he pull into that driveway?

A Yes.

. . . .

Q Were you on the tractor when you saw Mr. Hess pull into the driveway?

A Yes.

. . . .

Q What did you do?

A He dropped the ramps and I proceeded onto [State Route] 87, and I remember slowing down getting ready to turn into the driveway, and that's all I can tell you.

. . . .

Q Where was the last location that you can place yourself on Route 87 before the collision?

A Ready to turn in the driveway.

Q Had you been able to maneuver any part of the tractor off of Route 87 before the collision?

A Yes.

Q What part?

A The front tires was off, I do believe. I think.

May 5, 2005, Dep. of Collett L. Keefer, II, at pp. 16, 23–24, 33.

At the time of the collision, Mr. Keefer was turning into the driveway so that he could drive the tractor onto the truck's trailer. Thus, it is clear that Mr. Keefer was "getting on" to the truck at the time of the subject accident. Accordingly, we affirm the circuit court's ruling finding that Mr. Keefer was "occupying" the covered truck at the time of the accident.

### B. Using

Next, Farm Family contends that the circuit court erred by finding that Mr. Keefer was "using" the covered vehicle at the time of the accident. Under the facts of the case *sub judice*, Farm Family argues that there is no evidence that Mr. Keefer was "using" the insured truck at the time of the accident. In this regard, Farm Family reiterates that Mr. Keefer was on the tractor some twenty-five to thirty feet *away* from the truck when he

was hit by Ms. Ferrell. Given these facts, Farm Family says that it is apparent that there is no "causal connection" between Mr. Keefer's injuries and the insured vehicle. Farm Family additionally urges that this contention is further supported by the fact that the police accident report references only the tractor and Ms. Ferrell's vehicle; it does not reference Mr. Hess's truck or trailer. Finally, Farm Family argues that it was not a foreseeable use of the truck for the tractor to be rear-ended on State Route 87, particularly when the truck was in a private driveway and not on the State Route at the time of the accident and some twenty-five to thirty feet away from the collision site.

With respect to the "use" of a motor vehicle, we previously have held that

W. Va.Code, 33–6–31(c) [1995] requires insurance companies to provide uninsured motorist coverage, and make available underinsured motorist coverage, for any person, except a bailee for hire, who uses the insured vehicle with the express or implied consent of the named insured. The term "uses" in W. Va.Code, 33–6–31(c) [1995] is less restrictive than the term "occupying." "Use" of an insured vehicle implies employing the vehicle for some purpose or object of the user.

Syl. pt. 3, *Adkins v. Meador,* 201 W.Va. 148, 494 S.E.2d 915 (1997). More specifically, we have explained that the "use" of a motor vehicle entails both a causal connection and a foreseeability component. In other words, "[u]nder *W. Va.Code,* 33–6–31(c) [1995], insurers must provide uninsured motorist coverage, and make available underinsured motorist coverage, for injuries causally connected to the use of the vehicle, and foreseeably identifiable with the normal use of the vehicle." Syl. pt. 4, *Adkins v. Meador,* 201 W.Va. 148, 494 S.E.2d 915. To determine whether a vehicle's use is "causally connected" to the injuries sustained, several factors guide our inquiry:

When the "use" of a vehicle is in question for insurance purposes due to the separation of an individual from a vehicle at the time of an accident, the court must determine whether there is a causal connection between the motor vehicle and the

injury. In making that determination, the court may consider, but is not limited by, the following factors: a) whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident; b) whether the individual was vehicle oriented as opposed to highway or sidewalk oriented; c) whether the individual had relinquished control of the vehicle; and d) whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

Syllabus point 2, *Cleaver v. Big Arm Bar & Grill, Inc.,* 202 W.Va. 122, 502 S.E.2d 438 (1998). Lastly, whether a vehicle was "used" in a particular accident depends upon the facts and circumstances of the case: "[u]nder *W. Va.Code,* 33–6–31(c) [1995], whether or not an injury arose from the 'use' of a motor vehicle depends upon the factual context of each case." Syl. pt. 5, *Adkins,* 201 W.Va. 148, 494 S.E.2d 915.

Applying these holdings to the facts of the case *sub judice,* we conclude that the circuit court correctly determined that Mr. Keefer was "using" the insured truck at the time of his accident with Ms. Ferrell. Pursuant to Syllabus point 4 of *Adkins,* Mr. Keefer's injuries were both "causally connected to the use of the" covered truck and were "foreseeably identifiable with the normal use of the" covered truck. 201 W.Va. 148, 494 S.E.2d 915. With respect to the causal connection component, the factors enumerated in Syllabus point 2 of *Cleaver v. Big Arm Bar & Grill, Inc.,* 202 W.Va. 122, 502 S.E.2d 438, are instructive to our analysis. The record evidence shows that the tractor "was in reasonably close proximity to the insured vehicle at the time of the accident" because the accident occurred as the tractor was turning into the driveway where the truck, with attached trailer, was parked approximately twenty-five to thirty feet away. Syl. pt. 2, in part, *Cleaver,* 202 W.Va. 122, 502 S.E.2d 438. In addition, Mr. Keefer was turning into the driveway when he was hit by Ms. Ferrell. Thus, while the tractor was on the highway, it was oriented toward the truck at the time of the collision. *See id.* Under the facts of this case, the inquiry as to

"whether the individual had relinquished control of the vehicle" is not applicable because Mr. Keefer was not in control of the truck and the intended use of the truck to haul the tractor did not require him to operate the truck during the loading process. *Id.* Finally, as we have repeatedly observed during our analysis, at the time he was injured, Mr. Keefer "was engaged in a transaction reasonably related to the use of the vehicle." Syl. pt. 2, in part, *Cleaver*, 202 W.Va. 122, 502 S.E.2d 438. As noted above, Mr. Keefer was driving the tractor so that it could be loaded onto the trailer that was attached to the covered truck; thus, the injuries Mr. Keefer sustained while driving the tractor were "causally connected to the use of the" truck. Syl. pt. 4, in part, *Adkins*, 201 W.Va. 148, 494 S.E.2d 915.

Moreover, it was foreseeable that the tractor would be loaded onto the truck and that injuries might occur during that process. Syl. pt. 4, in part, *Adkins v. Meador*, 201 W.Va. 148, 494 S.E.2d 915. The policy of insurance providing coverage for Mr. Hess's truck was a business policy designating the insured business as a "farmer." Insofar as the insured truck was intended to be utilized for farm use, and the policy specifically recognized this fact, the injuries sustained while attempting to load a farm vehicle, *i.e.,* the tractor, onto the insured farm truck were "foreseeably identifiable with the normal use of the" covered truck. *Id.* Therefore, the circuit court did not err by concluding that Mr. Keefer was "using" the covered truck at the time of the accident.

### C. Insured

Farm Family's final assignment of error is that the circuit court erred by finding that Mr. Keefer is covered as an "insured" under the subject policy. Because, Farm Family maintains, Mr. Keefer was not a named insured under Mr. Hess's business auto policy, he would have to come within the definition of an "insured" in the policy's provisions regarding UM coverage. Under these criteria, Mr. Keefer is not a "family member" of a named insured, nor is he entitled to recover

as a result of bodily injuries sustained by another insured. Thus, Mr. Keefer may recover under Mr. Hess's policy only if he was " 'occupying' or using a covered 'auto' " at the time of the accident. Insofar as Mr. Keefer was neither occupying nor using the truck covered by the subject policy at the time of the accident, Farm Family argues, Mr. Hess's Farm Family policy does not provide UM coverage to him.

We agree with Farm Family's assertions that Mr. Keefer is not entitled to UM benefits under the policy insuring Mr. Hess's truck under those provisions of the policy according coverage to named insureds and family members of named insureds. We disagree, however, with Farm Family's assertions that Mr. Keefer's actions did not constitute "occupying" or "using" the covered truck so as to be eligible to receive UM benefits for his injuries. Rather, as discussed in the previous sections, we find that Mr. Keefer was both "occupying" and "using" the truck at the time he was injured by Ms. Ferrell. Therefore, we affirm the circuit court's rulings affording coverage to Mr. Keefer.

### IV.

### CONCLUSION

For the foregoing reasons, the April 27, 2006, order of the Circuit Court of Mason County is hereby affirmed.

Affirmed.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

STARCHER, J., concurring:

(Filed Dec 6, 2007)

The majority's opinion is well-reasoned and beautifully states an arcane but obvious point of insurance law: an uninsured motorist insurance policy protects anyone [1] who is *using* the vehicle insured by the policy.

---

1. *W. Va.Code,* 33–6–31(c) [1998] says that "any person ... who uses ... the [insured] motor vehicle" is entitled to protection against uninsured drivers.

I write separately to point out my belief that Section III.A of the majority opinion is—while intellectually sound—wholly irrelevant.

West Virginia's insurance statutes establish a list of things that must be included in every automobile insurance policy. These insurance statutes also say how insurance companies must define certain terms in their policies.

West Virginia law requires every motor vehicle insurance policy to contain coverage for injuries caused by uninsured motorists. *See W.Va.Code*, 33–6–31(b) [1998] (Every policy "shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle[.]"). Uninsured motorist coverage is required to protect the "insured," and state law defines an insured as including "any person ... who *uses* ... the motor vehicle to which the policy applies." *W. Va.Code*, 33–6–31(c) (emphasis added).[2]

West Virginia's insurance laws also say that if an insurance policy has coverage or terms that are contrary to state law, then courts are to ignore the policy language and infer the coverage that should have been provided, had the insurance company followed the law, *W. Va.Code*, 33–6–17 [1957] mandates that:

> The named insured on the policy, however, as well as the named insured's spouse and household family members, are entitled to additional protection. They are covered anywhere they might be injured by an uninsured driver, regardless of their relationship to the motor vehicle listed on the policy. As one court said, "They are insured when injured in an owned vehicle named in the policy, in an owned vehicle not named in the policy, in an unowned vehicle, on a motorcycle, on a bicycle, whether afoot or on horseback or even on a pogo stick." *Bradley v. Mid–Century Ins. Co.*, 409 Mich. 1, 24–38, 294 N.W.2d 141, 145–152 (1980). *See also* 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 4.2, at 60–61 (2d ed. 1992) ("Persons who are either named insureds or family members residing with a named insured ... are afforded relatively comprehensive protection by the provisions used in most uninsured motorist insurance coverages." As insureds they "are protected when they are operating or are passengers in a motor vehicle, as well as when they are engaged in any other

Any insurance policy, rider, or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this chapter, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this chapter.

*See also* Syllabus Point 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989) ("Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes.").

Put another way, provisions in an insurance policy that are more restrictive than statutory requirements are void and ineffective as against public policy. *See* Syllabus Point 2, *Universal Underwriters Ins. Co. v. Taylor*, 185 W.Va. 606, 408 S.E.2d 358 (1991); Syllabus Point 1, *Bell v. State Farm Mut. Auto. Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974); Syllabus Point 2, *Johnson v. Continental Casualty Co.*, 157 W.Va. 572, 201 S.E.2d 292 (1973).

In this case, Farm Family Casualty Insurance Company adopted an insurance policy that contained language contrary to state law. As the majority opinion discusses in

activity such as walking, riding a bicycle, driving a hay wagon, or even sitting on a front porch.").

**2.** To be fair, uninsured motorist coverage is supposed to cover the "named insured" and any other "insured," and *W. Va.Code*, 33–6–31(c) defines those terms this way:

> ... the term "named insured" shall mean the person named as such in the declarations of the policy or contract and shall also include such person's spouse if a resident of the same household and the term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person, except a bailee for hire, who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies or the personal representative of any of the above[.]

Section III.A, the Farm Family policy provided coverage for "occupying" the vehicle. This section of the opinion fairly interprets the Farm Family policy as covering Mr. Keefer, concluding that Mr. Keefer was "occupying" the covered vehicle because he was "getting on" the truck at the time of the collision.

But this Court made clear in *Adkins v. Meador*, 201 W.Va. 148, 494 S.E.2d 915 (1997) that an insurance company's limitation of coverage to those people "occupying" a vehicle is void and ineffective as against public policy. State law requires coverage for "using" a vehicle, and "[t]he term 'uses' in W.Va.Code, 33–6–31(c) [1995] is less restrictive than the term 'occupying.' 'Use' of an insured vehicle implies employing the vehicle for some purpose or object of the user." Syllabus Point 3, in part, *Adkins v. Meador*.

I therefore believe that Section III.A of the majority opinion is irrelevant and, in some respects, does an injustice to West Virginia citizens who purchase car insurance. The requirement that automobile insurance policies provide coverage for "using" a vehicle was adopted by the Legislature in 1967. *See* 1967 *Acts of the Legislature*, Chap. 97. In the 1997 case of *Adkins v. Meador*, *supra*, this Court said that state law requires insurance companies to provide coverage for "using" and not "occupying" the vehicle. We plainly said that limiting coverage to people "occupying" the vehicle was contrary to state law, void, and unenforceable.

Yet, here we are, some ten years after *Adkins v. Meador* and forty years after the uninsured motorist statute was adopted, and in Section III.A, the majority opinion deigns to actually give some semblance of respectability and authority to an insurance policy that uses the term "occupying."

Farm Family's continued use of an insurance policy term that is plainly contrary to state law is, in my mind, *prima facie* bad faith. The continued use of policy language that violates state law, and the continued attempt to apply that language to deny coverage, is an affront to the citizens of this

State. But when the insurance company comes into a courtroom and, through its lawyers, argues that the policy language is all hunky—dory and should be used to deny coverage—well, in my mind, that is the definition of frivolous litigation that warrants sanctions by the court. So the next time a circuit judge hears an insurance company say "there's no coverage because he wasn't occupying the vehicle," that judge should feel free to direct the insurance company's attention to the term "use" in *W. Va.Code*, 33–6–31(c). The judge should also consider using the insurance company's checkbook to get a firm hold on the insurance company's attention.

In sum, I respectfully and whole-heartedly concur with the majority's reasoning. But I believe that Section III.A of the opinion was unnecessary to the Court's ultimate conclusion.

BENJAMIN, Justice, dissenting:
*"Obviously I'm very excited to stay here and I plan on being here a long time."*
  -Rich Rodriguez, December 8, 2006
  Former WVU football coach
  Resigned December 2007
  (Filed Dec. 19, 2007)

An intention. A determination to do a certain thing, an intention is characterized not by what will happen, but by the potential for what *might* happen. Here, we have a claimed intention to use or occupy an insured vehicle at some future time. That potentiality, no matter how far removed from the present, is apparently all that is now necessary to trigger uninsured motorist coverage under the majority opinion in this matter.

The facts of this matter are relatively simple. Appellant Farm Family Casualty Insurance Company (hereinafter "Farm Family") insured a 2002 Dodge truck under a business auto policy issued to Kenneth D. Hess.[1] On September 2, 2002, the insured Dodge truck, with an attached trailer, was parked in a driveway approximately 25–30 feet away from the intersection of the driveway with State Route 87 in Leon, Mason County, West Virginia. Appellee, Collett L. Keefer, II,

---

**1.** As acknowledged by the majority, the policy designated the insured business as an individual

and identified the type of business as farmer.

(hereinafter "Mr. Keefer") was driving a 1972 Allis–Chamber 180 farm tractor on State Route 87 when the tractor was struck from behind by a vehicle driven by Angela Mae Farrell (hereinafter "Ms. Ferrell"). According to Mr. Keefer's own testimony, he was slowing down and getting ready to turn into the driveway when the collision occurred. He remained 25–30 feet away from the truck-trailer assembly after the collision.

Apparently, Ms. Ferrell was uninsured at the time of the collision. Therefore, Mr. Keefer sought to recover uninsured motorist coverage under the Farm Family policy on the Dodge truck arguing that he was using or occupying the insured Dodge truck while he was driving the tractor on State Route 87. This argument is so imaginative, I think it bears repeating: Mr. Keefer sought to recover uninsured motorist coverage under the Farm Family policy on the Dodge truck arguing that he was using or occupying the insured Dodge truck (parked some 25–30 feet away on the driveway) while he was driving the tractor on State Route 87.

Under the Farm Family policy, an individual must be "using" or "occupying" a covered auto at the time of injury in order to qualify for uninsured motorist coverage. The policy defines the term "occupying" as *"in, upon, getting in, on, out or off"* a covered auto. I simply cannot agree with the majority's charitable conclusion that the coverage term "getting on" is satisfied by an intention to at some time in the future load the tractor which Mr. Keefer was driving on a state roadway onto the trailer which was attached to the insured Dodge truck some 25–30 feet away on a private driveway. *See,* Majority opinion, p. 100. No suggestion has been made

that Mr. Keefer also intended to drive the insured Dodge truck after loading the tractor onto the trailer which was attached to the insured Dodge truck. Also it is not clear that Mr. Keefer himself would have loaded the tractor onto the trailer which was attached to the insured Dodge truck or if someone else may have taken over the operation of the tractor prior to loading it onto the trailer. Notwithstanding the majority's reach for a contrived meaning of the phrase, the undisputed evidence simply does not, and by common sense cannot, support the majority's finding herein that Mr. Keefer was "getting on" the insured Dodge truck. *See,* Majority opinion, p. 101.

I must also dispute the majority's conclusion that Mr. Keefer was "using" the insured Dodge truck at the time of the collision. It is undisputed that Mr. Keefer did not drive the insured Dodge truck into the driveway and did not lower the trailer ramps to prepare the trailer for the loading of the tractor. Kenneth D. Hess performed those actions. At the time of the collision, Mr. Keefer was operating an entirely different motor vehicle, the tractor, not the insured Dodge truck. Under our law, " '[u]se' of an insured vehicle implies employing the vehicle for some purpose or object of the user." Syl. Pt. 3, in part, *Adkins v. Meador,* 201 W.Va. 148, 494 S.E.2d 915 (1997). An injury must be "causally connected to the use of the [insured] vehicle, and foreseeably identifiable with the normal use of the [insured] vehicle" before uninsured motorist coverage under a policy insuring the vehicle is triggered. Syl. Pt. 4, in part, *Adkins.*[2] This *"causal connection must be more than incidental, fortuitous or but for." Baber v. Fortner,* 186 W.Va. 413,

---

**2.** In Syllabus Point 2, of *Cleaver v. Big Arm Bar & Grill, Inc.,* 202 W.Va. 122, 502 S.E.2d 438 (1998), this Court held:

> When the "use" of a vehicle is in question for insurance purposes due to the separation of an individual from a vehicle at the time of an accident, the court must determine whether there is a causal connection between the motor vehicle and the injury. In making that determination, the court may consider, but is not limited by, the following factors: a) whether the individual was in reasonably close proximity to the insured vehicle at the time of the accident; b) whether the individual was vehicle oriented as opposed to highway or sidewalk

oriented; c) whether the individual had relinquished control of the vehicle; and d) whether the individual was engaged in a transaction reasonably related to the use of the vehicle at the time of the accident.

The majority's generous construction of the facts of the instant case in order to justify its finding that the *Cleaver* factors for "use" have been satisfied evidences the stretch that must be made to find that Mr. Keefer was "using" the insured truck at the time of the collision, when, in reality, he was operating and thereby "using" a different vehicle at least 25–30 feet away from the trailer that was attached to the insured vehicle.

417, 412 S.E.2d 814, 818 (1991) (emphasis in original), quoting, *Detroit Automobile Inter-Insurance Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414, 419 (1980). Apparently lost on the majority is the fact that Mr. Keefer was both "using" and "occupying" a vehicle *other than* the insured Dodge truck at the time of the collision. Any causal connection between Mr. Keefer's driving of the tractor on State Route 87 was merely incidental or fortuitous to any potential future use of the insured Dodge truck. Moreover, the majority simply assumes a normal use of the insured Dodge truck was to pull a trailer hauling farm equipment, and does not point to any evidence in the record to support this finding other than the fact that the Dodge truck was insured under a business policy of insurance issued to a farmer.

Because the majority opinion is founded upon speculation and assumed connections between Mr. Keefer and the insured vehicle, gives to the coverage definition at issue a definition which is at best fanciful, and is contrary to our existing law on uninsured motorist coverage, I respectfully dissent.