## WESTBROOK v. LANDA.

### No. 11083.

Court of Civil Appeals of Texas.
San Antonio.

Feb. 4, 1942.

Geo. R. Thomson and R. G. Harris, both of San Antonio, for appellant.

Brooks, Napier, Brown & Matthews and Clinton G. Brown, Jr., all of San Antonio, for appellee.

NORVELL, Justice.

This is an appeal from a judgment based upon an instructed verdict. Appellee, Harry Landa, brought this suit upon a promissory note executed by the appellant, C. Westbrook. Appellant pleaded that Landa has sold certain shares of corporate stock in Servtex Materials Company, beneficially owned by appellant, but registered in Landa's name on the books of the corporation; that such sale had been authorized by appellant only in the event a sufficient amount were realized from said sale to discharge appellant's indebtedness upon the promissory note held by appellee, and therefore "the legal effect of said sale or other disposition of" appellant's "shares of stock by" appellee "was to fully and finally pay off and discharge the promissory note sued upon by" appellee.

Appellee vigorously denied appellant's asserted beneficial ownership of the corporate shares involved, and the evidence relating thereto was conflicting.

It appears that the note sued upon was given in renewal of two former notes executed by Westbrook, payable to Landa, and secured by chattel mortgages upon cattle. Evidently Westbrook sold the cattle but did not pay off the notes in their entirety.

Westbrook and Landa met in San Antonio and discussed the renewal of the notes held by Landa. As to this conversation, Westbrook testified as follows:

"Q. This note that is being sued on is a note for $6,200.00. Was there anything said about these cattle at the time you executed that note? A. That $6,000.00?

"Q. Yes, the renewal note. A. Yes, sir. He says, 'you sold mortgaged cattle.' And I said, 'Well, I did not consider that I sold any mortgaged cattle at all; that was not the agreement that it was mortgaged cattle.' I said, 'If you want to get technical on it, that is true, but I did not consider it was mortgaged cattle.' I said, 'Neither have you turned over any Servtex Stock to me,' and he said, 'Well, let's forget the whole thing, just give me a plain note for the $6,100.00,' or whatever it is.

"Q. Where did that conversation take place? A. In his office in the Alamo National Bank Building here in town.

"Q. Was that about the time the note was executed or dated? A. That was. I went on back to Houston and he sent me the note down there to sign, and I signed it down there and mailed it back to him, and then he mailed me or had the abstract company or county clerk to mail me the old mortgage, the old chattel mortgage, which I believe I turned over to you. That was paid by that agreement."

Appellant contends that there were a number of issues raised by the testimony, which should have been submitted to the jury. Appellee takes the position that, "admitting these fact questions may have existed in this case at one stage of the trial, each of them clearly went out of the window when Westbrook testified on redirect examination by his own attorney that he gave Landa the note sued upon as a plain unsecured promissory note in renewal of the two cattle notes and in pay-

ment of his debt to Landa, and in settlement of his claim against Landa for the Servtex stock, and in settlement of Landa's claim against him for the sale of the mortgaged cattle."

If from the testimony of Westbrook, above set out, the only reasonable conclusion that can be drawn is that stated by appellee, i. e., that Westbrook settled his claim against Landa with reference to Servtex stock, the judgment should be affirmed upon the theory that Westbrook testified to a fact which, if true, destroys his defense to Landa's action. See Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227, this day decided by this Court, and the authorities therein cited.

If, however, Westbrook's testimony will reasonably support another or different inference than that urged by appellee, it seems that the trial court's action in taking the case from the jury was erroneous.

In American Jurisprudence it is said: "Clearly, if a party, as a witness, unequivocally concedes a fact, such concession, for the purposes of the trial, has the force of a judicial admission, and a party is bound thereby unless the court, in its reasonable discretion, allows the concession to be later withdrawn, explained, or modified, if it appears to have been made by improvidence or mistake." 20 Am.Jur. 1032, § 1181.

As pointed out in Happ v. Happ, supra, statements made by a party from the witness stand, which are adverse to his interest, are considered as being in the nature of judicial admissions and, consequently, binding upon the party making them.

In the annotation appearing in 80 A.L.R. 626, it is said: "A search for a general principle deducible from the foregoing cases (relating to the conclusiveness of testimony of a party favorable to the adverse party) does not yield satisfactory results. The attempt of some courts to draw an analogy between the statements of parties on the witness stand and judicial admissions contained in pleading and agreements of counsel is not entirely convincing. But in all these cases the courts sense the fact that it would be 'as absurd, as it manifestly would be unjust,' to allow a party to recover after he has clearly and unequivocally sworn himself out of court."

Whatever may be the justice of the criticism of the theory under which statements from the witness stand are considered as similar to judicial admissions, the rationale of the rule, as stated in the above quotation, is undoubtedly correct. And we are further of the opinion that it provides the basis of a workable test applicable to the facts of this particular case.

While it would be manifestly unjust to allow a party to recover after he has clearly and unequivocally sworn to facts which if true would defeat his cause of action or destroy his defense, it is also true that caution must be observed in the application of a rule which gives the same effect to statements made from the witness stand during the course of a trial under the usual attendant circumstances as that given to deliberate and presumedly carefully prepared statements contained in pleadings. "A party testifying does not do so at the peril of having every slip of his tongue taken as conclusively true, nor is he absolutely bound by inconsistent statements made on cross-examination." 20 Am.Jur. 1032, § 1181.

If we suppose a fact finding favorable to Westbrook upon the issue here involved, it could be thus stated: "At the time of the execution of the note sued upon, Westbrook did not waive his claim to the Servtex shares of stock."

The inquiry then is whether or not Westbrook's testimony clearly and unequivocally contradicts the above supposed finding.

Westbrook did not in so many words surrender or waive his claim to the Servtex stock. Such action must be inferable from the action taken by Westbrook after Landa stated, "well let's forget the whole thing." The term "the whole thing," as used by Landa, is not entirely clear. Except for the statement following, concerning the execution of a new note, it might be reasonably supposed that the "whole thing" comprehended the three matters mentioned in the course of the conversation, as detailed by Westbrook; namely, the debt owed by Westbrook to Landa, Landa's claim against Westbrook by reason of the sale of mortgaged cattle, and Westbrook's claim against Landa relating to the Servtex shares of stock. However, the debt was not "forgotten," nor the amount thereof reduced. One possible construction of the language used in this conversation would embrace an illegal consideration; i. e., the foregoing of the institution of a possible criminal prosecu-

**234**

tion because of Westbrook's sale of mortgaged cattle, in exchange for Westbrook's surrender of certain corporate shares having a monetary value. To say the least, several possible and permissible inferences as to the actual agreement made may be drawn from the testimony relating to said conversation; one inference, or conclusion, being that Westbrook did not waive his claim to the Servtex stock, but that Landa intended and Westbrook understood that the "whole thing" to be "forgotten" was the charge brought by Landa that Westbrook had sold mortgaged cattle, and nothing else.

█ Westbrook's testimony does not necessarily conflict with the supposed finding above set out, and can not therefore be given a conclusive effect similar to that of a judicial admission.

As the evidence relating to Westbrook's asserted beneficial ownership of the Servtex stock involved is conflicting, and it can not be said as a matter of law that Westbrook waived his claim to said stock, it follows that the judgment appealed from should be reversed and the cause remanded. It is accordingly so ordered.