UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Petitioner,

v.

Louis GOUDEAU, Respondent.

No. 06–0987.

Supreme Court of Texas.

Argued Dec. 6, 2007.

Decided Dec. 19, 2008.

---

7.   890 S.W.2d at 40–41 (emphasis in original).

8.   *Id.* at 41.

Wesson H. Tribble, Tribble & Sanders, Houston, Richard J. Jauma, Tomball, John R. Shrode, Acosta Shrode & Soule, and David W. Holman, Holman Law Firm, P.C., Houston, for Petitioner.

Ronald L. Bair, Bair Hilty, P.C., Houston, TX, for Intervenor.

Otto D. Hewitt III, Hewitt Law Firm, Alvin, and Alton C. Todd, Law Offices of Alton C. Todd, Friendswood, TX, for Respondent.

Justice BRISTER delivered the opinion of the Court, joined by Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, and Justice WILLETT.

One can imagine few more sympathetic litigants than Louis Goudeau, a "Good Samaritan" who stopped his car on a Houston freeway to help a stranded motorist. After leaving his car to approach the disabled one, Goudeau was severely injured when a third driver smashed into both cars and pinned him between them and a retaining wall.

There is no question Goudeau can recover from the driver who caused this accident—he already has. But that driver had only $20,000 in insurance. The question instead is whether Goudeau can recover under his employer's underinsured motorist policy, which applies only if Goudeau was "occupying" his car at the time of the accident. The court of appeals found a fact question on that issue, even though Goudeau had exited his car, closed the door, and walked around the front toward the retaining wall when the accident occurred.

It is natural to sympathize with a litigant who has suffered harm caused by someone who cannot pay the consequences. But if sympathy were a rule of contract construction, there would soon be no law of contracts left. Under the insurance policy here, Goudeau was not "occupying" his car at the time of the accident, so he cannot recover under this policy.

## I. The Background

Goudeau worked for Advantage BMW, and was driving one of its cars in the course of his employment. He stopped on the right shoulder of the Sam Houston Tollway to help another driver who had collided with the freeway's retaining wall. After getting out of his car and walking around the front toward the retaining wall, a car driven by Alex Rodriguez slammed into both parked cars, pinning Goudeau against the retaining wall and crushing his pelvis.

Advantage BMW had two policies with United States Fidelity & Guaranty Company ("USF & G"): a workers compensation policy, and an auto policy with uninsured/underinsured coverage of $1 million. USF & G paid more than $100,000 in benefits to Goudeau and his medical providers under the compensation policy, but denied benefits under the underinsured-motorist policy.

A year after Goudeau filed suit against Rodriguez, the latter tendered his policy limits of $20,000. Goudeau then amended to sue USF & G for breach of the underinsured-motorist policy. USF & G answered using one law firm, and a few days later intervened using a different law firm to assert its $100,000 statutory subrogation claim against the money Goudeau recovered in the suit.[1]

The trial court granted summary judgment against Goudeau on his underinsured claim. The court of appeals reversed and remanded for trial, finding a fact issue as to whether Goudeau was "occupying" his vehicle.[2]

## II. The Policy Question

■ The underinsured policy here covered certain designated Advantage BMW employees, as well as any others "occupy-

1. *See* TEX. LAB.CODE § 417.002. Goudeau raised no objection to USF & G's intervention in his pleadings or summary judgment response.

2. 243 S.W.3d 1, 10. The portion of the court of appeals' judgment affirming summary judgment against Goudeau's former wife Tasha, *see id.* at 5–6, has not been appealed.

ing" an Advantage vehicle during a collision. Goudeau was not designated in the policy, so there is no coverage unless he was "occupying" a covered car when the collision occurred. The standard-form policy defined "occupying" as "in, upon, getting in, on, out or off."

Goudeau concedes he was not "in" his car when the accident occurred, nor was he in the process of "getting in, on, out, or off" of it. He asserts coverage only on the ground that he was "occupying" the car by being "upon" it when he was injured.

Under the traditional canon of construction *noscitur a sociis* ("a word is known by the company it keeps"), each of the words used here must be construed in context.[3] In this context, a person sitting in the back of a pickup at the time of an accident might be "occupying" the vehicle by being "upon" it.

■ But a driver who has exited the car, closed the door, walked around the front, and then has the vehicle smashed into him cannot be said to be "occupying" the vehicle at the time of the collision, even if afterwards he ends up partly "upon" it. We cannot ignore the context by focusing solely on "upon" and ignoring "occupying." Construing "upon" to include the situation here would "ascrib[e] to one word a mean-

ing so broad that it is inconsistent with its accompanying words."[4]

The court of appeals adopted a test requiring claimants to show only "a causal connection between the incident that caused the injury and the covered vehicle."[5] We have required such a causal connection when deciding whether an uninsured motorist claim "arises out of" the use of a motor vehicle,[6] but that is not the same question as whether a person was "occupying" a covered car. The court of appeals cited several cases denying coverage to non-occupants when a covered car had no causal connection to an accident,[7] but that does not imply the opposite: that if a covered car has a causal connection to an accident, then everyone injured must have been "occupying" the covered car. Bystanders, pedestrians, and occupants of other vehicles are not "occupying" a covered car merely because it was somehow involved.

Neither party asks us to look to the law of other states on this question, and a brief review shows why. In deciding whether a person was "occupying" a covered vehicle under an uninsured/underinsured policy, the states have employed a multitude of surrogate tests, including:

● a four-pronged test;[8]

**3.** *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750 (Tex.2006).

**4.** *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

**5.** 243 S.W.3d at 8.

**6.** *Mid–Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex.1999).

**7.** 243 S.W.3d at 8 (citing *McDonald v. So. County Mut. Ins. Co.*, 176 S.W.3d 464, 471 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *McKiddy v. Trinity Lloyd's Ins. Co.*, 155 S.W.3d 307, 309 (Tex.App.-Dallas 2004, pet. denied); *Ins. Co. of the State of Penn. v. Pearson*, No. 07–03–0340–CV, 2004 WL 2053285

at *1 (Tex.App.-Amarillo Sept.7, 2004, no pet.); *Schulz v. State Farm Mut. Auto. Ins. Co.*, 930 S.W.2d 872, 875–76 (Tex.App.-Houston [1st Dist.] 1996, no pet.); *Fulton v. Tex. Farm Bureau Ins. Co.*, 773 S.W.2d 391, 393 (Tex.App.-Dallas 1989, writ denied)).

**8.** *See Gen. Accident Ins. Co. v. D'Alessandro*, 671 A.2d 1233, 1235 (R.I.1996) (requiring (1) causal connection between injury and insured vehicle, (2) reasonably close geographic proximity to vehicle, (3) vehicle-orientation rather than highway-orientation or sidewalk-orientation, and (4) engagement in transaction essential to use of the vehicle); *Kentucky Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 168 (Ky.1992) (same); *Utica Mut. Ins. v.*

- a three-pronged test; [9]
- a position-of-safety test; [10]
- a severed-relationship test; [11]
- a chain-of-events test; [12]
- a substantial-nexus test; [13]
- a reasonable-relationship test; [14]
- a close-proximity test; [15]
- a vehicle-orientation test; [16]
- a close-proximity or vehicle-use test; [17]
- a close-proximity *and* vehicle-use test; [18] and last but not least,
- a plain-and-ordinary-meaning test.[19]

■ Under Texas law, we are required to construe insurance policies according to their plain language,[20] using "the ordinary, everyday meaning of the words to the general public." [21] While we strive for uniform construction when policy language is

*Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1009 (1984) (same).

9. *See Butzberger v. Foster*, 151 Wash.2d 396, 89 P.3d 689, 696 (2004) (rejecting fourth prong of four-prong test).

10. *See Olsen v. Farm Bureau Ins. Co.*, 259 Neb. 329, 609 N.W.2d 664, 670 (2000) (holding passenger was in the process of getting out of vehicle until he reached a position of safety away from the car); *Joins v. Bonner*, 28 Ohio St.3d 398, 504 N.E.2d 61, 63 (1986) (same).

11. *See Moherek v. Tucker*, 69 Wis.2d 41, 230 N.W.2d 148, 152 (1975) (holding plaintiff "had not severed his relationship with the vehicle" while holding spare tire between cars so one could push the other without scratching their bumpers).

12. *See Dawes v. First Ins. Co. of Hawai'i*, 77 Hawai'i 117, 883 P.2d 38, 53 (1994) (finding coverage as occupancy if insured vehicle "started the chain of events" that resulted in injury).

13. *See Torres v. Travelers Indem. Co.*, 171 N.J. 147, 793 A.2d 592, 593 (2002) ("[I]n order to obtain UM coverage where occupancy is in issue, a plaintiff is required to establish a substantial nexus between the insured vehicle and the injury sustained.").

14. *See Genthner v. Progressive Cas. Ins. Co.*, 681 A.2d 479, 482 (Me.1996) (holding attempt to apprehend hit-and-run driver was "directly and reasonably related to the operation and use of the insured vehicle"); *Sayers v. Safeco Ins. Co. of Am.*, 192 Mont. 336, 628 P.2d 659, 661 (1981).

15. *See Newman v. Erie Ins. Exch.*, 256 Va. 501, 507 S.E.2d 348, 350 (1998) (holding

child crossing street was not in close proximity to school bus and thus not "occupying" it).

16. *See Miller v. Amica Mut. Ins. Co.*, 156 N.H. 117, 931 A.2d 1180, 1182–83 (2007); *Allstate Ins. Co. v. Graham*, 106 N.M. 779, 750 P.2d 1105, 1106 (N.M.1988) (holding claimant "was simply not engaged in a transaction oriented to the use of the [covered auto] at the time of the accident").

17. *See Nat'l Union Fire Ins. Co. v. Fisher*, 692 A.2d 892, 896 (Del.1997) ("[A] person is considered an occupant of the covered vehicle if he or she is either: (a) within a reasonable geographic perimeter of the vehicle or (b) engaged in a task related to the operation of the vehicle.").

18. *See Simpson v. United States Fid. & Guar. Co.*, 562 N.W.2d 627, 629 (Iowa 1997) ("'Courts have examined the relationship between the vehicle and the claimant, both as to geographical proximity and the orientation of the claimant's activities, to decide whether a particular claimant was "occupying" the insured vehicle at the time of his or her injury'") (quoting *Tropf v. Am. Family Mut. Ins. Co.*, 558 N.W.2d 158, 160 (Iowa 1997)).

19. *See Keefer v. Ferrell*, 221 W.Va. 348, 655 S.E.2d 94, 99 (2007); *Allied Mut. Ins. Co. v. West. Nat'l Mut. Ins. Co.*, 552 N.W.2d 561, 563 (Minn.1996); *Cook v. Aetna Ins. Co.*, 661 So.2d 1169, 1172–73 (Ala.1995); *Marcilionis v. Farmers Ins. Co.*, 318 Or. 640, 871 P.2d 470, 472–73 (1994).

20. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex.2007); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex.2003).

21. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006).

used in many other states (as is the case here),[22] the many different tests already in use render uniformity impossible. Accordingly, we adhere to the law of Texas (and some of our sister states) that the plain meaning of "occupying" as defined in this policy cannot be stretched to include Goudeau.

### III. The Request for Admission

■ Alternatively, Goudeau argues (and the dissent agrees) that USF & G admitted coverage in response to a request for admission. But as the court of appeals correctly recognized, the carrier appeared in two different capacities, and a request sent to it in one capacity cannot be used against it in another.[23]

The plaintiffs requested that USF & G admit Goudeau was covered under the underinsured motorist policy. But they did not send the request to the lawyer representing USF & G on that policy; they sent it instead to the lawyer representing USF & G as intervenor under the worker's compensation policy. In the latter capacity, USF & G stood "in the shoes of the insured," asserting only claims that belonged to Goudeau.[24] By contrast, USF & G in its capacity defending the underinsured policy stood in the shoes of the underinsured motorist.[25] The plaintiffs already knew that intervenor USF & G asserted coverage and that defendant USF & G denied it, as that is what each of their pleadings said.

Rule 198 expressly provides that a response to a request for admission can only be used against "the party making the admission":

> Any admission made by a party under this rule may be used solely in the pending action and not in any other proceeding. A matter admitted under this rule is conclusively established *as to the party making the admission* unless the court permits the party to withdraw or amend the admission.[26]

The question here is how that rule applies when a party appears in two different capacities.

Although requests for admissions have been in use for more than 60 years, there appears to be only a single case directly answering this question. In *Krasa v. Derrico,* decided five years after requests for admission were first adopted,[27] the plaintiffs sent requests for admission to Mabel Krasa, which she failed to answer. The Fourth Court of Appeals held the deemed requests could support judgment against Krasa individually, but not against her as executor of her husband's estate, as the requests were not directed to her in that capacity.[28]

■ We think *Krasa* is correct. We have repeatedly held in other contexts that a party appears only in the capacity in which it is named. Thus:

- a suit against a government official in an official capacity is not a suit against the official individually;[29]

---

**22.** *Id.* at 752.

**23.** 243 S.W.3d at 2.

**24.** *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 774 (Tex.2007).

**25.** *Mid–Century Ins. Co. v. Kidd,* 997 S.W.2d 265, 274 (Tex.1999); *Laurence v. State Farm Mut. Auto. Ins. Co.,* 984 S.W.2d 351, 353 (Tex.App.-Austin 1999, writ denied).

**26.** Tex.R. Civ. P. 198.3 (emphasis added).

**27.** 193 S.W.2d 891, 893 (Tex.Civ.App.-San Antonio 1946, no writ).

**28.** *Id.* at 892–93.

**29.** *Texas A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 844 (Tex.2007).

● a suit against a partnership is not binding on a partner who was served but not named in his individual capacity; [30]

● a suit is binding against a parent and a minor for whom they appear as next friend only if the parent was named in both capacities; [31] and

● a judgment cannot be entered against a trust when the trustee appeared solely in her individual capacity.[32]

Similarly, while a compulsory counterclaim must be brought against an "opposing party," [33] the latter term does not include claims against the same party acting in a different capacity.[34]

We think this rule must be applied to an insurer who stands in different "shoes." Insurers issue many policies to people with many conflicting interests. A carrier may represent both parties in an auto accident, stand as both primary and excess insurer,[35] or defend an insured while at the same time denying coverage.[36] As a result, carriers must sometimes assert conflicting positions through different counsel. If they can be bound by an admission in one capacity that was sent to them in another, they can be made to forfeit every case regardless of the merits.

We agree of course with the dissent that no person may sue himself. But if that rule applies here, USF & G's intervention should be dismissed; deeming its admission binding on defendant USF & G has exactly the opposite result. Certainly Goudeau has never raised such an objection. Even if he had, Texas law requires that the first money recovered in this suit go to USF & G as his compensation carrier.[37] Texas law also requires USF & G to provide underinsured coverage,[38] and pay Goudeau if he proves his case. Which of these statutes should USF & G have ignored to meet the dissent's hypothetical objection?

■ It is true that USF & G may have had other ways to avoid this situation. Perhaps it could have intervened in Goudeau's name,[39] thus removing any confusion about who was admitting what. Perhaps it could have brought its subrogation suit separately, in which case its responses in one suit could not be used against it in the other.[40] Or perhaps it could have qualified its response,[41] denying UM coverage

---

**30.** *Kao Holdings, L.P. v. Young,* 261 S.W.3d 60, 65 (Tex.2008).

**31.** *Am. Gen. Fire and Cas. Co. v. Vandewater,* 907 S.W.2d 491, 492–93 (Tex.1995); *Orange Grove Indep. Sch. Dist. v. Rivera,* 679 S.W.2d 482, 483 (Tex.1984).

**32.** *Werner v. Colwell,* 909 S.W.2d 866, 870 (Tex.1995).

**33.** Tex.R. Civ. P. 97(a).

**34.** *Ingersoll–Rand Co. v. Valero Energy Corp.,* 997 S.W.2d 203, 207 (Tex.1999).

**35.** *See, e.g., Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.,* 236 S.W.3d 765, 768 (Tex. 2007).

**36.** *See Unauthorized Practice of Law Comm. v. Am. Home Assurance Co., Inc.,* 261 S.W.3d 24, 40 (Tex.2008).

**37.** *See* Tex. Lab.Code § 417.002; *Texas Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 33 (Tex. 2008).

**38.** *See* Tex. Ins.Code § 1952.101(b).

**39.** Tex. Lab.Code § 417.001(b) ("[T]he insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary.").

**40.** *See* Tex.R. Civ. P. 198.3 ("Any admission made by a party under this rule may be used solely in the pending action and not in any other proceeding.").

**41.** Tex.R. Civ. P. 198.2(b) ("The responding party may qualify an answer, or deny a request in part, only when good faith requires.").

but alternatively seeking reimbursement if coverage existed. But these alternatives do not change the rule: a party appearing in one capacity cannot be bound by an admission sent to it in another, because admissions are binding only against "the party making the admission."[42]

Requests for admission are a tool, not a trapdoor.[43] Goudeau's attorneys knew perfectly well that defendant USF & G was denying underinsured coverage. Accordingly, they are not entitled to use a response against it when they sent it to the law firm representing it in a different capacity.

### IV. The Evidentiary Objection

Goudeau also objected to the summary judgment on the ground that USF & G's evidence was not authenticated. The trial court overruled the objection, and the court of appeals did not reach the issue.[44]

Contrary to Goudeau's objection, the underinsured policy (which showed the policy language) was authenticated by a USF & G records custodian.[45] Similarly, the accident report from the Department of Public Safety (which showed the relative positions of Goudeau and the cars at the time of the accident) was authenticated by its records custodian.[46] As these documents provide all that is necessary to decide the policy construction issue here, the trial court did not err in overruling Goudeau's objections.

### V. The Conclusion

Accordingly, we reverse that part of the court of appeals' judgment concerning Goudeau's underinsured motorist claim, and render judgment that he take nothing on that claim.

Justice GREEN filed a dissenting opinion in which Chief Justice JEFFERSON and Justice JOHNSON joined.

Justice GREEN, joined by Chief Justice JEFFERSON and Justice JOHNSON, dissenting.

Because I would not reach the issue of whether Louis Goudeau was occupying the vehicle when the accident occurred, I dissent. In the trial court, the insurer admitted to the claimant that he was insured under the policy. That admission binds the insurer even in an unusual case like this where the insurer made the admission while purporting to act not as defendant, but as intervenor. Because such an admission relieves the claimant's burden of proving insured status, and prevents the insurer from arguing otherwise, I would hold that the insurer's motion for summary judgment should have been denied.

### I

United States Fidelity and Guaranty Company (USF & G) provided Advantage Motor, Inc.'s commercial auto insurance policy, which included underinsured motorist coverage for Advantage's automobiles and persons "occupying a covered auto," and also served as Advantage's workers' compensation insurer, which paid Goudeau more than $100,000 under the workers' compensation policy's indemnity provisions. After Goudeau and his wife filed lawsuits against Alex Rodriguez and USF & G, USF & G answered and denied that Goudeau was an insured under the auto policy. Then, through separate counsel,

**42.** Tex.R. Civ. P. 198.3.

**43.** *Wheeler v. Green,* 157 S.W.3d 439, 443 (Tex.2005).

**44.** 243 S.W.3d at 10.

**45.** *See* Tex.R. Evid 902(10).

**46.** *See* Tex R. Evid. 902(4).

USF & G intervened as the Goudeaus' subrogee[1] to assert claims for reimbursement with respect to any amount recovered from Rodriguez or defendant USF & G. After intervention, the Goudeaus served intervenor USF & G with requests for admissions. In its responses, intervenor USF & G admitted that "Louis Goudeau is an insured for the purposes of underinsured motorist benefits under USF & G Policy No. DRE3847700." The trial court later granted defendant USF & G's motion for partial summary judgment against the Goudeaus, rejecting their argument that one of the policy exclusions applied, but accepting their argument that the auto policy did not insure Goudeau in the first place because Goudeau, who was outside of the vehicle at the time of the collision, was not "occupying" a covered vehicle. The Goudeaus settled with Rodriguez for his policy's $20,000 limit, and the trial court entered an order apportioning the settlement between the Goudeaus and intervenor USF & G.

The Goudeaus appealed, arguing that defendant USF & G's summary judgment evidence failed to prove that Goudeau was not "occupying" the covered vehicle, that defendant USF & G failed to properly authenticate its summary judgment evidence, and that intervenor USF & G's responses to the requests for admission defeated defendant USF & G's motion. Defendant USF & G reurged its insured-status argument, as well as the policy exclusion argument. With respect to Louis Goudeau, the court of appeals reversed, concluding that, "[v]iewing the evidence in the light most favorable to Louis, USF & G—Defendant did not establish conclusively that Louis was not occupying a covered vehicle." 243 S.W.3d at 9–10.[2]

## II

Texas Rule of Civil Procedure 198 allows a party to request "that the other party admit the truth of any matter within the scope of discovery, including statements of opinion or of fact or of the application of law to fact." Tex.R. Civ. P. 198.1. Admissions produce two results: they relieve the requesting party's burden of proving the admitted matter and prevent the admitting party from disputing the same. *See Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex. 1989); *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex. 1980); *U.S. Fid. & Guar. Co. v. Carr,* 242 S.W.2d 224, 228–29 (Tex.Civ.App.-San Antonio 1951, writ ref'd). As intervenor, USF & G unequivocally admitted that the USF & G auto policy insured Goudeau. Because no effort was made to withdraw or limit that admission, Goudeau should prevail against the intervenor on this question of insured status.[3]

The operation of the relatively simple admissions rule is complicated by the fact that USF & G was named as *both* the

---

1. *See* Tex. Lab.Code § 417.001(b) ("If a benefit is claimed by an injured employee or a legal beneficiary of the employee, the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary.").

2. The court of appeals affirmed the trial court's grant of summary judgment as to Tasha Goudeau, 243 S.W.3d at 5–6, and she does not appeal that decision.

3. "[A] party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted." *Marshall,* 767 S.W.2d at 700. The Goudeaus did just that in their reply to defendant USF & G's motion for summary judgment, arguing that USF & G was precluded from introducing evidence contrary to the admission, and that the admission, at minimum, created a material issue of fact.

intervenor and the defendant, and now the defendant is being charged with the intervenor's admission. Although the intervenor and defendant were represented by separate counsel, neither has ever attempted—either in the trial court or in these appellate proceedings—to clarify this oddity of identification. Defendant USF & G's motion for summary judgment noted that Goudeau had received benefits from "the Intervenor in the case, also United States Fidelity and Guaranty Company." Throughout the appellate proceedings, defendant USF & G did not dispute that the same company was litigating as both defendant and intervenor. USF & G's only argument is that the intervenor's admissions cannot bind the defendant because the intervenor is not the same party as the defendant. At trial, the Goudeaus did not formally challenge the propriety of USF & G's intervention,[4] but the Goudeaus did argue that the intervenor and the defendant are the same company, and that the admissions of USF & G while acting as intervenor bind USF & G while acting as defendant. I agree.

No person may sue himself. *United States v. Interstate Commerce Comm'n,* 337 U.S. 426, 430, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949).

> There is much argument with citation of many cases to establish the long-recognized general principle that no person may sue himself. Properly understood the general principle is sound, for courts only adjudicate justiciable controversies. They do not engage in the academic pastime of rendering judgments in favor of persons against themselves.

*Id.* This rule stems from the well-established standing requirement of concrete

adversity. *See United States v. Nixon,* 418 U.S. 683, 692–97, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Fed. Mar. Comm'n,* 694 F.2d 793, 810 (D.C.Cir. 1982).[5] As a result, "courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented." *Interstate Commerce Comm'n,* 337 U.S. at 430, 69 S.Ct. 1410; *accord United States v. Providence Journal Co.,* 485 U.S. 693, 708 n. 11, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988); *Nixon,* 418 U.S. at 693, 94 S.Ct. 3090. Although our admissions rule speaks in terms of each "party," *see* TEX.R. CIV. P. 198. 1, our procedural rules as a whole are predicated on the assumption that a person can serve only as one party in each lawsuit. To hold otherwise would invite our courts to decide cases without the truly adverse litigants who are necessary to "sharpen[ ] the presentation of issues upon which the [C]ourt so largely depends for illumination." *Massachusetts v. EPA,* 549 U.S. 497, 127 S.Ct. 1438, 1453, 167 L.Ed.2d 248 (2007). Moreover, such an interpretation would disrupt the rules' careful allotment of litigation procedures and stand as an obstacle to a "just, fair, equitable and impartial adjudication." TEX.R. CIV. P. 1.

For the same reason that courts must "look behind names" to establish justiciability, *Interstate Commerce Comm'n,* 337 U.S. at 430, 69 S.Ct. 1410; *accord Providence Journal Co.,* 485 U.S. at 708 n. 11, 108 S.Ct. 1502; *Nixon,* 418 U.S. at 693, 94 S.Ct. 3090, the trial court here should have looked behind the party designations of "defendant" and "intervenor" when it applied the admissions rule. We have consistently applied our rules of procedure to

---

**4.** *See* TEX.R. CIV. P. 60 ("Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party.").

**5.** Texas courts look to federal jurisprudence on issues of justiciability. *See Neeley v. W. Orange–Cove Consol. Indep. Sch. Dist.,* 176 S.W.3d 746, 774 (Tex.2005).

discourage tactical gamesmanship, *see State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991); *Gutierrez v. Dallas Indep. Sch. Dist.*, 729 S.W.2d 691, 693 (Tex.1987), and our admissions rule is no exception, *see County of Dallas v. Wiland*, 216 S.W.3d 344, 355 n. 46 (Tex.2007). Our goal in barring parties from introducing proof that contradicts an earlier admission is fairness: "[T]he courts sense the fact that it would be as absurd, as it manifestly would be unjust, to allow a party to recover after he has clearly and unequivocally sworn himself out of court." *Carr*, 242 S.W.2d at 229 (quoting *Westbrook v. Landa*, 160 S.W.2d 232, 233 (Tex.Civ.App.-San Antonio 1942, no writ)) (italics and quotations omitted); *see also Mendoza*, 606 S.W.2d at 694.

The record here reflects just such a case. The pleadings of both the intervenor and the defendant are consistently attributed to USF & G, and there is no indication of any real separation between the USF & G that administers the auto policy and the USF & G that administers the workers' compensation policy. Although, as the Court points out, insurers may stand in different shoes or act in different capacities, there is no indication that USF & G in this case is anything but a single entity with the power to sue and be sued only in the name of USF & G. USF & G never made any attempt to distinguish the identity or capacity of USF & G as defendant from USF & G as intervenor, even after the Goudeaus specifically argued that the defendant and intervenor are the same company and that the admissions of one bind the other. As a result, the only conclusion to be had is that behind this intervenor and defendant lies only one person with one interest: USF & G.[6] Whatever dispute there is between these two USF & G factions lies entirely within USF & G, and is not deserving of individualized adjudication in our courts. The principles of fairness inherent in our rules would not be promoted by allowing USF & G to litigate on summary judgment a question that it had unequivocally admitted eleven months earlier, albeit under a different fictional label. Thus, the admission extracted by the Goudeaus should bind USF & G as both intervenor and defendant. Having admitted that Goudeau was insured under the auto policy, I would affirm the judgment of the court of appeals and hold that USF & G could not succeed on its motion for summary judgment. *See Marshall*, 767 S.W.2d at 700; *Mendoza*, 606 S.W.2d at 694; *Carr*, 242 S.W.2d at 228–29.

### III

Because USF & G is bound by its admission of Louis Goudeau's insured status, I would not reach the issue of whether Goudeau was "occupying" the vehicle within the meaning of the USF & G policy. I therefore dissent from the Court's judgment.

---

**6.** If the record were unclear, summary judgment for a movant in USF & G's position would nonetheless be improper because the litigant's true identity is certainly a "material fact" under our summary judgment jurisprudence. *See Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex.2005) ("In a summary judgment motion brought under Texas Rule of Civil Procedure 166a(c), the moving party has the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law."); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005) (instructing that, to review a trial court's grant of summary judgment, we "examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion").