# Supreme Court of Texas

No. 19-0612

Mosaic Baybrook One, L.P., and Mosaic Baybrook Two, L.P.,

*Petitioners,*

v.

Paul Simien,

*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

*~ consolidated for oral argument with ~*

No. 21-0159

Mosaic Baybrook One, L.P.; Mosaic Baybrook Two, L.P.; and
Mosaic Residential, Inc.,

*Petitioners,*

v.

Paul Simien,

*Respondent*

On Petition for Review from the
Court of Appeals for the First District of Texas

JUSTICE BLAND, joined by Chief Justice Hecht, Justice Blacklock, and Justice Huddle, dissenting.

The Court imposes sweeping statutory liability by equating an imprecise billing label to an "overcharge." In doing so, it commits far weightier errors of imprecision than the landlord by expanding the text of the governing statute and its implementing rules beyond their expressly limited scope.

The fees the landlord charged were not fabricated. The tenants received the utility services that the local municipal utility district provided. The landlord charged the fees for these services with two separate line items. One item charged a master-metered water and sewer fee, based on customer usage, which the landlord allocated to the tenant according to the Public Utility Commission of Texas's approved method. The tenant has no quarrel with that assessment.

The other item, labeled a water and sewer "Base Fee" in the billing statement, bundled the utility district's other per-apartment fees (for law enforcement, fire, and emergency medical services) with the district's monthly base charge for all of its services, including water. None of these fees—each set by the utility district per apartment unit—involved metered service that varied based on water usage.

The regulatory rule the tenant claims the landlord violated governs the proper assessment of *metered* water usage costs. Despite no evidence of any metered overcharge, the Court holds the landlord liable as a matter of law to an entire class of tenants under a provision directed to *metered* usage. In so doing, the Court ignores the statute's limitations—limitations that are further reflected in the statute's

2

implementing rules. The Court also contravenes our regular admonition to look behind labels to adjudge the substance, imposing class action liability without evidence of an overcharge.[1] Because the class action plaintiff in this case was not overcharged under the applicable Water Code provision and implementing rules, and the Court holds differently, I respectfully dissent.

## I

Petitioners Mosaic Baybrook One, L.P.; Mosaic Baybrook Two, L.P.; and Mosaic Residential, Inc. operate an apartment complex in Harris County. Respondent Paul Simien lived in one of Mosaic's apartment buildings.

Harris County Municipal Utility District 55 provides local utility services to the apartment complex and its tenants. District 55 charged for its services pursuant to a governing rate order. First, District 55 charged for monthly water and sewer *usage*, based on the *metered* number of gallons used multiplied by the rate set forth in its rate order. In addition, District 55 charged (1) a monthly law-enforcement-service fee "per each apartment unit," (2) a monthly emergency-medical-service

---

[1] *See, e.g.*, *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 612 (Tex. 2008) ("[C]ourts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented." (quoting *United States v. Interstate Com. Comm'n*, 337 U.S. 426, 430 (1949))); *First USA Mgmt., Inc. v. Esmond*, 960 S.W.2d 625, 627 (Tex. 1997) ("Whether an amount of money is interest depends not on what the parties call it but on the substance of the transaction."); *Cameron v. Cameron*, 641 S.W.2d 210, 221 (Tex. 1982) ("Each court has looked behind the label when dividing marital property, that which was acquired during marriage."); *Gonzales Cnty. Sav. & Loan Ass'n v. Freeman*, 534 S.W.2d 903, 907 (Tex. 1976) ("[C]ourts must look beyond mere labels to the substance of many charges in order to be able to determine whether such fees in reality constitute usury.").

fee "per each apartment unit," (3) a monthly fire-protection fee "per equivalent connection," and (4) a monthly service charge "per apartment unit." The District assessed this service charge collectively "for the sale of water, collection, and disposal of sewer, fire protection, emergency medical and law enforcement . . . within the District."

Each month, District 55 billed Mosaic for its utility services. Mosaic forwarded District 55's bill to its billing coordinator, RealPage Utility Management, Inc., or its predecessor. Using District 55's billing statement, RealPage generated tenant bills for each month's rent and fees. The pertinent tenant charges are reflected in one of Simien's bills:

> Water/Sewer Base Fee (7/1/2016 - 7/30/2016)
> Base Fee Amt                                                  $35.49
>
> Water/Sewer (7/1/2016 - 7/30/2016)
> # Bdrms: 2 Factor: 2.80 Rate: 5.7814677      $15.65

While the dates, amounts charged, and rate for the second "Water/Sewer" fee varied from month to month, the descriptions remained constant on Simien's bills.

The first charge on Simien's bill—the "Water/Sewer Base Fee"—consisted of District 55's "per unit charge" for its "monthly service charge, monthly fire protection rate, monthly emergency medical service rate, and monthly law enforcement service rate." The second charge—the "Water/Sewer" fee—allocated District 55's master-metered water-

4

usage charges among Mosaic's tenants, according to the Public Utility Commission's approved allocation method.[2]

While Simien was a tenant in February 2017, he sued Mosaic individually and on behalf of others similarly situated, alleging in a single-count petition that Mosaic violated Water Code Section 13.505 and the Utility Commission's implementing rules. Mosaic denied Simien's allegations. Simien moved for a traditional partial summary judgment, seeking to impose class-wide statutory liability. Simien claimed that Mosaic violated Water Code Section 13.505 and its related Utility Commission rules as a matter of law by not separately identifying District 55's per-apartment utility-service fees based on the service provided. Mosaic responded that it "incorrectly named a group of charges from the MUD 55," but that such charges were distinct from the "monthly water service and monthly sewer service charges that are charged by the MUD 55 on a usage basis and then allocated by [Mosaic] consistent with Texas law."

The trial court granted Simien's motion, but it also granted permission to Mosaic to seek an interlocutory appeal of its ruling under

---

[2] *See* 39 Tex. Reg. 2667, 2718 (2014), *adopted by* 39 Tex. Reg. 5903 (2014), *amended by* 43 Tex. Reg. 6826 (2018) (formerly 16 Tex. Admin. Code § 24.124(e)(2)(A)(iii)(III), now codified at 16 Tex. Admin. Code § 24.281(e)(2)(A)(iii)(III)) (Pub. Util. Comm'n of Tex., Substantive Rules Applicable to Water and Sewer Service Providers). The applicable Utility Commission rules were formerly located in Title 16, Chapter 24, Subchapter H. In 2018, after this case commenced, the regulations "were renumbered for administrative ease," which included "renaming and relettering certain subchapters," but the old and new regulations are substantially identical. 43 Tex. Reg. 6826 (2018) (Pub. Util. Comm'n of Tex.). This opinion cites the applicable former regulations.

Civil Practice and Remedies Code Section 51.014(d). The court of appeals declined to hear that appeal,[3] despite affirming the trial court's class certification order based on the class's common claim of a Water Code violation.[4]

Mosaic petitioned this Court for review. We have jurisdiction to decide the question of law presented in Mosaic's petition.[5]

## II

At the time of Simien's petition, Water Code Section 13.505 imposed liability against a landlord who "violates a rule of the utility commission *regarding . . . nonsubmetered master metered utility costs.*"[6] Under that version of Section 13.505, "the tenant may recover three times the amount of any overcharge" plus other remedies for a landlord's improper allocation of those costs.[7] The question thus presented in this

---

[3] 644 S.W.3d 671, 672 (Tex. App.—Houston [1st Dist.] 2019) (citing Tex. R. App. P. 28.3(e)(4)).

[4] 646 S.W.3d 847, 857 (Tex. App.—Houston [1st Dist.] 2020).

[5] *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 736 (Tex. 2019) ("The pure legal question at issue here is precisely the sort of question section 51.014(d) was enacted for—allowing an early resolution when the interlocutory order meets the Legislature's threshold for an exception to the final judgment rule."); *Valero Refinery-Tex., LP v. Vela*, 647 S.W.3d 709, 710 (Tex. 2022) ("Notwithstanding the court of appeals' refusal to accept the appeal, this Court has jurisdiction to review the trial court's interlocutory order on the merits.").

[6] Act of May 13, 2013, 83d Leg., R.S., ch. 171, § 83, sec. 13.505, 2013 Tex. Gen. Laws 772, 809–10 (emphasis added) (amended 2017) (current version at Tex. Water Code § 13.505).

[7] *Id.*

6

appeal is whether Mosaic violated a Utility Commission rule governing master-metered utility costs. It did not.

Mosaic's bundling of District 55's monthly service charge with the District's other per-unit fees for police, fire, and medical utility services does not involve *metered* utility costs as the statute and implementing rules define them. Mosaic has argued since its trial court briefing that the base fee is a "collection of . . . permissible charges" properly charged on a per-unit basis that "simply have nothing to do with water or wastewater service." Mosaic does not contest that the base fee is regulated by the Utility Commission rules, but instead argued that the charge was "expressly permitted by the PUC rules when charged on a per-unit basis, as it was done here."[8]

Ignoring the crucial distinctions between the types of charges and specific rules governing them, the Court holds that bundling the District's per-unit utility fees together failed to comply with Utility Commission Rule 24.124. Rule 24.124(a) at the time prohibited a landlord from bundling other charges together with master-metered fees that are further *submetered or allocated* to the tenant for the tenant's water or wastewater utility usage:

> Prohibited charges. Charges billed to tenants for submetered or allocated utility service may only include bills for water or wastewater from the retail public utility and must not include any fees billed to the owner by the

---

[8] Accordingly, we reject the Court's view that Mosaic did not preserve this argument for review. *Ante* at 43–44.

7

retail public utility for any deposit, disconnect, reconnect, late payment, or other similar fees.[9]

The rule prohibited bundling of other charges with "[c]harges billed to tenants for submetered or allocated utility service."[10] "Allocated utility service" is a defined term in the rules: "[w]ater or wastewater utility service that is *master metered* to an owner by a retail public utility *and allocated to tenants by the owner*."[11] In other words, "allocated utility service" involves one particular kind of utility service: service that is initially master-metered—under the rules, a usage charge based on a meter that "measure[s], for billing purposes, all water usage of an apartment house"—and then further allocated to the tenant

---

[9] 39 Tex. Reg. at 2717 (now codified at 16 Tex. Admin. Code § 24.281(a)).

[10] *Id.* Rule 24.124(a)'s prohibition against including certain fees in the charges billed for allocated utility service is inherently superfluous: (1) the definition of "allocated utility service" is already exclusive of such fees; (2) such fees are not "water or wastewater from the retail public utility" under the ordinary meaning of those terms; (3) Rule 24.125(e)'s requirement that allocated utility service be "separate and distinct from any other charges on the bill" already prohibits bundling charges for water and wastewater use with any other fees; and (4) Rule 24.124(e) requires the owner to deduct "dwelling unit base charges or customer service charge[s]" before allocating the master meter bill among tenants. 39 Tex. Reg. at 2715–19 (now codified at 16 Tex. Admin. Code §§ 24.275(c)(1), .281(a), .283(e), .281(e)(1)). The Utility Commission is under no strictures to avoid superfluity; it may use as many belts and suspenders as it wishes to ensure that the charge for water and wastewater usage is precisely calculated and not commingled with other amounts. Whatever application the rule against superfluity has in interpreting regulations, it is only a secondary canon that cannot overcome the meaning of "allocated utility service" that the regulation provides.

[11] 39 Tex. Reg. at 2715 (emphases added) (now codified at 16 Tex. Admin. Code § 24.275(c)(1)).

by the landlord.[12] This definition limits the scope of the governing rule. The Court's misapprehension of it infects its analysis throughout.

Applying the proper definition of "allocated utility service," Mosaic's bill complies with Rule 24.124. Simien's second item, the fee for "Water/Sewer" (billed at $15.65 on Simien's sample bill), used District 55's master-metered amount and allocated that amount to its tenants according to "the average number of occupants per bedroom," as the Utility Commission's "occupancy formula" requires.[13] The "Water/Sewer" fee is the item and charge for *owner-allocated, master-metered utility service* under Rule 24.124. It is the charge "billed to tenants for submetered or allocated utility service [that] only include[s] bills for water or wastewater from the retail public utility."[14] It does not "include any fees billed to the owner by the retail public utility for any deposit, disconnect, reconnect, late payment, or other similar fees."[15] This fee is not bundled with any other charge. Simien concedes as much.

Supplying its own definition of "allocated utility service" instead of the one the rules provide, however, the Court concludes that Rule 24.124(a) must be read to further "prohibit[] *any* amount that a landlord bills a tenant for utility service from including non-water charges."[16] The Court applies this broadened definition to the *first* item,

---

[12] *Id.* at 2716 (now codified at 16 Tex. Admin. Code § 24.275(c)(8)).

[13] *Id.* at 2718 (now codified at 16 Tex. Admin. Code § 24.281(e)(2)(A)(iii)).

[14] *Id.* at 2717 (now codified at 16 Tex. Admin. Code § 24.281(a)).

[15] *Id.*

[16] *Ante* at 34 (emphasis added).

9

the base fee—which contains no master-metered charges whatsoever—to hold that Mosaic nonetheless has violated Rule 24.124(a). Rule 24.124(a) simply does not apply to the base fee of per-apartment utility assessments that the utility district imposed. Neither does Section 13.505, which also confined its scope to rule violations involving "master metered utility costs."[17]

The Court dispenses with the regulatory definition found in the text and replaces it with its own broader one because, it claims, a landlord could "blatant[ly]" gin up a "tenant's water usage charge or base fee."[18] The Court claims that using the actual definition enables "landlords to 'use' an approved allocation formula to make an initial calculation and then make arbitrary adjustments wholly outside of that formula based on the amounts of non-water charges."[19]

Such a contention is inaccurate. First, a landlord who added a fictitious surcharge disguised as a water-usage charge violates Rule 24.124(a)'s requirement that "[c]harges billed to tenants for submetered or allocated utility service may *only* include bills for water or wastewater from the retail public utility."[20] A charge invented by the landlord is obviously not one "from the retail public utility."

---

[17] Act of May 13, 2013, 83d Leg., R.S., ch. 171, § 83, sec. 13.505, 2013 Tex. Gen. Laws 772, 809–10 (amended 2017) (current version at Tex. Water Code § 13.505).

[18] *Ante* at 32.

[19] *Id.* at 35.

[20] 39 Tex. Reg. at 2717 (now codified at 16 Tex. Admin. Code § 24.281(a)).

10

Second, the Utility Commission does not purport to regulate every aspect of a Texas lease.[21] For example, if a landlord charged a monthly pet fee that exceeded the amount the tenant agreed to pay in the lease, then the landlord may have overcharged the tenant and breached the lease. But the charge does not violate the Utility Commission's rules or create statutory liability under Water Code Section 13.505 because the statute and rules expressly confine their scope to violations involving *metered* water charges.

Third, contrary to the Court's implication, Rule 24.124(c) *permits* landlords to include a water-related "customer service charge" in the base fee.[22] District 55's rate order set a monthly customer-service charge per apartment. Mosaic separately charged the District's service charge from its tenants' water- and sewer-usage fees, consistent with the rules.[23] Rule 24.124(a) does not prohibit bundling the customer service charge with District 55's other per-apartment utility fees; the rule concerns only the presentation of the charge for master-metered and further allocated utility service.

---

[21] *See* Tex. Water Code § 13.5031(a) ("[T]he utility commission shall adopt rules and standards governing billing systems or methods used by . . . [landlords] for prorating or allocating among tenants nonsubmetered master metered utility service costs.").

[22] *See* 39 Tex. Reg. at 2717 ("If the retail public utility's rate structure includes a customer service charge, the owner shall bill each dwelling unit the amount of the customer service charge divided by the total number of dwelling units, including vacant units, that can receive service through the master meter serving the tenants.") (now codified at 16 Tex. Admin. Code § 24.281(c)).

[23] *Id.* at 2719 ("If issued on a multi-item bill, charges for submetered or allocated utility service must be separate and distinct from any other charges on the bill.") (now codified at 16 Tex. Admin. Code § 24.283(e)).

11

The Court attempts to skirt the limiting regulatory definitions by looking to the definitions of "costs," "rate," and "service" to make the point that the Utility Commission's "authority to regulate how the costs of master metered utility service are billed to tenants" is not limited to "how tenants are billed for the metered gallons they use."[24] No one disputes that point. As Mosaic correctly argues, however, the only Utility Commission rule governing charges not measured in gallons through a meter is the rule governing the customer service charge. And that rule provides that the landlord "shall bill each dwelling unit the amount of the customer service charge divided by the total number of dwelling units, including vacant units, that can receive service through the master meter serving the tenants."[25] The Utility Commission can and has exercised its authority over water-related utility-service costs, just not in the manner the Court envisions. The Utility Commission definitions emphasize that the rules governing water and sewer per-gallon charges are distinct from the rules governing the customer-service charge. "Allocated utility service" encompasses only "service that is master metered."[26] The customer-service charge, in contrast, "is a rate that is not dependent on the amount of water used through the master meter."[27] These contrasting definitions demonstrate that "allocated

---

[24] *Ante* at 45–46 & n.33 (citing Tex. Water Code §§ 13.002(21), .002(17), .5031(a)).

[25] 39 Tex. Reg. at 2717 (now codified at 16 Tex. Admin. Code § 24.281(c)).

[26] *Id.* at 2715 (now codified at 16 Tex. Admin. Code § 24.275(c)(1)).

[27] *Id.* (now codified at 16 Tex. Admin. Code § 24.275(c)(4)).

utility service" *is* dependent on the amount of water used through a master meter, or in other words, that "allocated utility service" encompasses only utility service that is measured in gallons used. Because Rule 24.124(a) governs only charges billed "for submetered or allocated utility service,"[28] the rule does not support the Court's expanded gloss that it prohibits the bundling of *nonmetered* charges.

The Court attempts to rely on Rules 24.125(e) and (f) to justify its alternative expanded definition. It describes subsection (e) as forbidding "the bundling of fees related to water and wastewater service with any fees unrelated to such service,"[29] but, once again, the Court ignores that the rule is confined to metered utility service. Subsection (e) provides that, "[i]f issued on a multi-item bill, charges for *submetered or allocated utility service* must be separate and distinct from any other charges on the bill."[30] "Allocated utility service," as discussed, does not encompass any and all "fees related to water and wastewater service,"[31] as the Court generalizes, but only those for "[w]ater or wastewater utility service *that is master metered* to an owner by a retail public utility."[32] The portion of Simien's bill charging for "allocated utility service"—the $15.65 in the sample bill—adheres to the rule. Mosaic presented it as a

---

[28] *Id.* at 2717 (now codified at 16 Tex. Admin. Code § 24.281(a)).

[29] *Ante* at 34.

[30] 39 Tex. Reg. at 2719 (now codified at 16 Tex. Admin. Code § 24.283(e)).

[31] *Ante* at 34.

[32] 39 Tex. Reg. at 2715 (now codified at 16 Tex. Admin. Code § 24.275(c)(1)).

13

separate item on the bill. It is, as required, "separate and distinct from any other charges on the bill."[33]

Rule 24.125(f) creates additional billing rules. It requires that a utility bill include, among other things, the "(1) total amount due for submetered or allocated water; (2) total amount due for submetered or allocated wastewater; [and] (3) total amount due for dwelling unit base charge(s) or customer service charge(s) or both, if applicable."[34] Rule 24.125(f) does not require these charges to be "separate and distinct," as Rule 24.125(e) does, but merely requires that the *total* amounts be "include[d]."[35] A bill that separately identifies each utility charge undeniably is more precise. And certainly, the Utility Commission could have required landlords to separately identify each and every utility customer-service charge from every other charge a municipal utility district imposes.[36] Under the Commission's rules that govern this case, however, the only charge that it elected to require be "separate and distinct" is the charge for master-metered utility service based on usage that the landlord further allocates to the tenant.[37]

Ignoring District 55's rate order and District 55's bills to Mosaic, the Court further theorizes that the fire, emergency-services, and

---

[33] *Id.* at 2719 (now codified at 16 Tex. Admin. Code § 24.283(e)).

[34] *Id.* (now codified at 16 Tex. Admin. Code § 24.283(f)).

[35] *Id.*

[36] *See* Act of May 13, 2013, 83d Leg., R.S., ch. 171, § 82, sec. 13.5031, 2013 Tex. Gen. Laws 772, 809 (amended 2017) (current version at Tex. Water Code § 13.5031).

[37] 39 Tex. Reg. at 2719 (now codified at 16 Tex. Admin. Code § 24.283(e)).

law-enforcement charges possibly could be "'additional charges on a tenant' . . . 'in excess of the actual charges imposed on' the landlord."[38] Simien, however, has never alleged and does not claim as a ground for summary judgment that the billed charges for fire, emergency services, and law enforcement exceed those that District 55 billed to Mosaic per apartment unit. Simien cannot uphold summary judgment on a ground he did not raise in the trial court.[39]

Giving "allocated utility service" its true regulatory definition would, the Court claims, force plaintiffs to conduct discovery to determine "whether a seemingly water-related charge on a tenant's bill was in fact attributable to costs unrelated to water service" before proceeding in court.[40] The Court relies on an inapplicable amended version of Water Code Section 13.505 to raise this issue.[41] Even so, a concern about judicial efficiency does not justify dispensing with the regulatory definition to judicially impose broader liability and civil penalties than statutes and regulations permit.[42]

---

[38] *Ante* at 33 (quoting Act of May 13, 2013, 83d Leg., R.S., ch. 171, § 82, sec. 13.5031(3), 2013 Tex. Gen. Laws 772, 809 (amended 2017) (current version at Tex. Water Code § 13.5031(a)(3)).

[39] *See Stiles v. Resol. Tr. Corp.*, 867 S.W.2d 24, 25 (Tex. 1993) ("Because the court of appeals erroneously affirmed on a ground not relied upon by the [respondent] in its motion for summary judgment, and because the summary judgment cannot be sustained on any ground that the [respondent] did rely upon, we reverse the judgment and remand the cause to the trial court.").

[40] *Ante* at 35.

[41] *Id.*

[42] The Court also speculates that, because the current version of Water Code Section 13.505 vests the Utility Commission with exclusive jurisdiction

The remedies provision in the applicable Water Code Section 13.505 contrasts with the Court's strained reading. Under the applicable version, a tenant may seek to "recover three times the amount of any overcharge."[43] That calculation is derived from "water utility service that is master metered for the apartment house" and the "wastewater utility service based on master metered water utility service."[44] Overcharge recovery under the statute thus depends on the difference between metered water and wastewater charges, properly allocated, compared to the way they were allocated in the bill.

Under the Court's interpretation, whether an overcharge in fact happened does not matter. Simien need not show *any* water or wastewater overcharge. Mosaic is instead liable for a statutory violation because it labeled its fire-, police-, and medical-services fees as a "Water/Sewer Base Fee" instead of "Water/Sewer/Fire/Police/Medical Services Base Fee." By focusing on a mathematical difference, however, Section 13.505 does not permit imprecise labeling to serve as a proxy for true overcharges.

---

over water-billing violations, a holding that the Water Code does not apply to the claims made here could raise jurisdictional implications. Nothing in the version of Section 13.505 that applies to Simien's claims, however, vested the Utility Commission with exclusive jurisdiction for the claims presented in this case. *See* Act of May 13, 2013, 83d Leg., R.S., ch. 171, § 83, sec. 13.505, 2013 Tex. Gen. Laws 772, 809–10 (amended 2017) (current version at Tex. Water Code § 13.505).

[43] Act of May 13, 2013, 83d Leg., R.S., ch. 171, § 83, sec. 13.505, 2013 Tex. Gen. Laws 772, 809–10 (amended 2017) (current version at Tex. Water Code § 13.505).

[44] Tex. Water Code § 13.501(4).

Finally, the barest passing reference to Simien's lease in his motion for summary judgment does not open the door to liability based on an unpleaded breach-of-contract claim. In his petition, Simien *disclaimed* any allegation "that the additional allocated charges were added in a manner that is inconsistent with the . . . Lease Addendum for Allocating Water/Wastewater Costs." The Court nonetheless independently crafts yet another possible liability theory, based on an unpleaded contract claim. The Court's discussion exceeds the scope of Simien's summary judgment under Section 13.505, which is the only pleaded cause of action and the only ground for summary judgment. Section 13.505 provides a statutory cause of action when a landlord "violates a rule of the utility commission regarding . . . nonsubmetered master metered utility costs."[45] Although a cost imposed in contravention of a lease may be a breach of contract, it is not a violation of rules governing master-metered utility costs. A summary judgment cannot stand on a ground not presented in the trial court, based on a claim that the plaintiff never pleaded.[46]

The trial court's error in imposing liability under the Water Code as a matter of law should require it to re-examine its class-certification order. Legally baseless theories cannot sustain certification of a class, and the "rigorous analysis of the claim required by Rule 42 cannot

---

[45] Act of May 13, 2013, 83d Leg., R.S., ch. 171, § 83, sec. 13.505, 2013 Tex. Gen. Laws 772, 809–10 (amended 2017) (current version at Tex. Water Code § 13.505).

[46] *See Stiles*, 867 S.W.2d at 25.

meaningfully or usefully be performed on a facially defective claim."[47] Without the summary judgment imposing statutory liability, Simien's basis for a class action dissolves. With the Court's opinion in hand, this class action proceeds.

*   *   *

Simien did not establish a violation of the Water Code or the Utility Commission's rules. The Court should reverse the trial court's partial summary judgment imposing liability under the Water Code, as well as the class-certification order, founded as it is on a fatal misapprehension of law. Because the Court imposes class-action statutory liability where none exists, I respectfully dissent.

Jane N. Bland
Justice

**OPINION FILED:** April 21, 2023

---

[47] *Am. Campus Cmtys., Inc. v. Berry*, ___ S.W.3d ___, ___, 2023 WL ___, at *___ (Tex. Apr. 21, 2023).

18